IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| d'AMICO DRY d.a.c., f/k/a d'Amico Dry Limited, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| vs. | | CA 18-0284-KD-MU |
| | : | **IN ADMIRALTY** |
| NIKKA FINANCE, INC., as owner of the M/V SEA GLASS II, | : | |
| Defendant. | | |

## ORDER

This matter is before the undersigned on Defendant Nikka Finance, Inc.'s expedited motion to authorize *custodia legis* expenses and motion to compel payment of same (Doc. 37), Plaintiff d'Amico Dry's response (Doc. 39), and Nikka's supplemental motion to expedite the authorization of *custodia legis* expenses and motion to compel payment of same (Doc. 48).

Having considered the parties' positions, the undersigned offers the following directions and ruling that will either resolve Nikka's motions or, at the very least, pare the issues down. Before getting to those directions, the undersigned simply notes that "[*i*]*n Custodia Legis* expenses are expenses reasonably incurred during *custodia legis* (i.e., post-arrest of a vessel)." *Oliver v. M/V BARBARY COAST,* 2011 WL 5827235, *1 (S.D. Ala. Nov. 18, 2011).

> Generally, "services or property advanced to preserve and maintain the vessel under seizure, furnished upon authority of the court or of an officer of a court . . . should be allowed as *custodia legis* expenses." . . .

> Even if such expenditures are made absent a court order, "'*custodia legis*' expenses may be ordered by the court . . . if equity and good conscience so require."

*Associated Metals and Minerals Corp. v. ALEXANDER'S UNITY MV,* 41 F.3d 1007, 1018 (5th Cir. 1995). Finally, as the party seeking to collect expenses *in custodia legis*, Nikka bears the "'burden of proving that [its] costs were equitably incurred,'" *Springleaf Financial Servs. of Alabama, Inc. v. F/V WHITEWATER,* 2013 WL 3008414, *2 (S.D. Ala. Jun. 17, 2013) (citations omitted), as "only expenses necessarily or reasonably incurred and reasonable in amount may be recovered as *custodia legis* expenses[.]" *Adams Offshore, Ltd. v. Con-Dive, LLC,* 2011 WL 1882640, *6 (S.D. Ala. May 17, 2011).

With these principles in mind, the undersigned finds Nikka's supplemental motion (Doc. 48) mostly premature—that is, to the extent it seeks the posting (by d'Amico) of security of over a million dollars for expenses that will continue to be incurred until 30 days post-trial (*see* id.)—both because those expenses have yet to be incurred and because such expenses may never be incurred should Nikka's motion to approve substitute security (Doc. 47) be granted. Accordingly, Nikka's supplemental motion (Doc. 48) is **DENIED IN THE MAIN AS PREMATURE.** However, to the extent the supplemental motion reiterates the request for the $37,352.11 made by previous motion (*compare id.* at 3 *with* Doc. 37, at 2), further direction is given to the parties. In addition, some direction is given with respect to the additional expenses incurred for the last ten plus days (that is, from July 1, 2018 to date).

In its initial motion (Doc. 37), Nikka seeks recovery of the following as *custodia*

*legis* expenses: (1) $1,062.84 for shifting by the Harbor Pilot; (2) $9,157.01 for CHIPCO Dockage; (3) $1,060.50 for line handling during the shifting; (4) $9,600.00 in towage expenses for the shifting; (5) $12,944.74 in expenses for Lay Berth Dockage; (6) $3,000.00 as Agency Fee for up to 5 days/$125.00 each day thereafter; (7) $500.00 in Agency Overtime; and (8) a $25.00 wire transfer fee. (Doc. 37, at 2 & Doc. 37, Exhibits A & B.) It is also clear from Nikka's supplemental motion, that it seeks Lay Berth Dockage of $2,157.46 per day since July 1, 2018, as well as expenses for crew wages, food, bunkers and lubricants since July 1, 2018. (*See* Doc. 48, at 2-3.) Based on d'Amico's response—in the "*categorical* sense"—that "storage and/or wharfage of an attached vessel is considered 'generally necessary for the due care and preservation of the vessel[,]'" (Doc. 39, at 2 (citation omitted)), the parties are hereby **ORDERED** to engage in good-faith conferencing regarding the expenses set out in this paragraph (*see* Doc. 46, at ¶ 11 (requiring the parties to engage in good-faith conferencing regarding any non-dispositive motions)) in an attempt to reach agreement on what expenses d'Amico is responsible for paying and/or should pay as they are incurred **BEFORE** this Court either offers any informal assistance to the parties (*see id.,* at ¶ 11.b.) or otherwise conducts a hearing regarding *custodia legis* expenses. The parties should report the results on their

good-faith conferencing not later than **July 26, 2018.**[1]

    **DONE** and **ORDERED** this the 12th day of July, 2018.

                              s/P. BRADLEY MURRAY  
                              **UNITED STATES MAGISTRATE JUDGE**

---

[1] To offer the parties a bit of this Court's perspective, d'Amico will be hard pressed to establish that it is not responsible for the "shifting" costs incurred in this case, although the $9,600.00 towing estimate (see Doc. 48, at 2) obviously would not need to be paid until the invoice is received, and it has already readily admitted that it is responsible for $125.00 a day in agency costs at least since June 28, 2018 (see Doc. 39, at 3). In addition, the per day Lay Berth dockage fees appear to the undersigned to be necessary and reasonable. On the other hand, as for the CHIPCO dockage ($9,157.01), the undersigned is not convinced that these costs were wholly (if at all) incurred post-arrest. As for crew wages, food, bunkers and lubricants from July 1, 2018 to the present, the Court notes that these expenses certainly fall within the customary definition of *custodia legis* expenses.