**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **d'Amico Dry d.a.c.,** | **)** | |
| | **)** | |
| **Plaintiff,** | **)** | |
| | **)** | |
| **v.** | **)** | **CIVIL ACTION No. 1:18-00284-KD-MU** |
| | **)** | |
| **Nikka Finance, Inc.,** | **)** | |
| **as owner of M/V SEA GLASS II,** | **)** | |
| | **)** | |
| **Defendant.** | **)** | |

## ORDER

Before the Court is Defendant Nikka Finance, Inc.'s Motion to Reduce Security (Doc. 60) and Plaintiff d'Amico Dry's response in opposition. (Doc. 77). For the reasons explained below, Nikka's motion is due to be denied.

## I.    BACKGROUND

From June 22, 2018 to July 20, 2018 the vessel M/V SEA GLASS II was subject to a writ of attachment. (Doc. 10). The parties could not reach a mutually acceptable amount of security. As a result, Nikka moved pursuant to FED. R. CIV. P. SUPP. R. E(5)(a) "for an Order vacating the attachment of the Vessel upon the posting of substitute security in the sum of $2,500,000.00 . . . ." (Doc. 47 at 1). D'Amico responded in partial opposition and demanded the bond be set "in the principal amount of Plaintiff's fairly stated claim plus 25 percent thereof, totaling $4,698,225.20." (Doc. 53 at 1). Nikka moved for leave to reply, but the Court denied the motion. (Docs. 54 & 56). The Court granted Nikka's original motion in part, setting the special bond at $3,758,580.32. (Doc. 58). This calculation included three subtotals: (1) the English judgment, ($1,766,278.54); (2) post-judgment interest ($1,266,347.90); and (3) attorneys' fees ($725,953.88).

Both parties agree the judgment amount should be included.

The second component is post-judgment interest, which the Court set at $1,266,347.90. This number originated from d'Amico's response (Doc. 53 at 8) and d'Amico's verified complaint. (Doc. 1 at ¶ 101). Attached to d'Amico's response was a declaration of William Marshall (a partner at Ince & Co. LLP, who served as lead attorney for d'Amico). D'Amico and Primera's FFA contained a choice-of-law provision, providing that it should be "construed in accordance with English law and shall be subject" London's High Court of Justice. (Doc. 76-3 at 6-7 ¶ 15). The Judgments Act 1838 provides that every judgment shall carry interest at 8% per annum. Mr. Marshall ratified d'Amico's interest calculation and agreed that $1,266,347.90 correctly represented the 9 years and 11 days at 8% per annum interest on the English judgment. He concluded "as a matter of English law, d'Amico is entitled to recover interest of at least $1,266,347.90 . . . ." (Doc. 53-2 at 4 ¶ 9).

Nikka took three exceptions to this figure in its original motion to fix security. First, it opposed including any interest whatsoever on the grounds that Nikka was not a party to the underlying contract. Therefore "the terms of the contract, including the provisions concerning the application of the English law interest rate of 8% and legal fees, do not apply to Nikka." (Doc. 47 at 5). Next, Nikka argued the judgment did not even provide for post-judgment interest. (Id.). Third, Nikka argued that assuming the substitute security should include accrued interest, "the interest rate should be based on the United States Treasury bond rate, which federal courts apply in awarding post judgment interest." (Doc. 47 at 5). Nikka argued the interest should accrue at 1% – not 8% – for a total of $159,494.95.[1]

---

[1] "$1,766,278,54 Judgment Amount + $159,494.95 Interest for 9 years, 11 days) (see d'Amico's formula Doc. 1 at 24, ¶ 101.)" Doc. 60 at 7.

The security's third and final portion was attorneys' fees, which amounted to $725,953.88. D'Amico included the fees charged by Thomas Tisdale, an amount which represented "work already performed as of the filing of the Verified Complaint." (Doc. 53 at 10 n. 3). Nikka argued d'Amico was not entitled to security for any attorneys' fees whatsoever. (Doc. 47 at 5).

Nikka filed a motion to reduce the security ($3,758,580.32) pursuant to FED. R. CIV. P. SUPP. R. E(6). It urges the Court to reduce the security to its original request: $2,500,000. (Doc. 60 at 8). On July 20, both parties filed a joint stipulation, in which each agreed to a letter of undertaking's terms in exchange for the vessel's release. (Doc. 66). The Court approved the letter of undertaking and released the vessel. (Doc. 67). Nevertheless, the motion to reduce security remains pending and Nikka's position vis-à-vis the security amount "remains unchanged." (Doc. 70 at 1). D'Amico opposes Nikka's motion. (See Doc. 77 at 2 ("[A]ll of the issues which Nikka raises are entirely without merit, and fall far short of the 'good cause' requirement of Rule E(6) motions.")).

## II.     DISCUSSION OF LAW

FED. R. CIV. P. SUPP. E(5)(a) provides that

the court shall fix the principal sum of the bond or stipulation at an amount sufficient to cover the amount of the plaintiff's claim fairly stated with accrued interest and costs; but the principal sum shall in no event exceed (i) twice the amount of the plaintiff's claim or (ii) the value of the property on due appraisement, whichever is smaller. The bond or stipulation shall be conditioned for the payment of the principal sum and interest thereon at 6 per cent per annum.

The Court applied the "fairly stated" standard to determine the special bond's amount.[2] As a sister court noted, the guiding standards beyond "fairly stated" are "sparse." 20th Century Fox Film Corp. v. M.V. Ship Agencies, Inc., 992 F. Supp. 1429, 1430 (M.D. Fla. 1997).

---

[2] The relevant Local Rule provides that

Another supplemental rule, E(6), allows the Court to reduce the amount of security given whenever security is taken. FED. R. CIV. P. SUPP. R. E(6) ("Whenever security is taken the court may, on motion and hearing, for good cause shown, reduce the amount of security given; and if the surety shall be or become insufficient, new or additional sureties may be required on motion and hearing.").

The purpose of an attachment is two-fold: "first, to gain jurisdiction over an absent defendant; and second, to assure satisfaction of a judgment." Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd., 460 F.3d 434, 437 (2d Cir. 2006). As the esteemed Judge Katzman noted in an exhaustive and thorough Second Circuit opinion concerning the interplay between attachment, vacatur, and reduction of security amount, "[t]he second purpose of maritime attachments is served by a rule that allows courts to set the security at an amount that fairly reflects the plaintiffs' likely recovery. This purpose does not require that property in excess of the amount necessary to ensure satisfaction of the judgment be attached." Transportes Navieros y Terrestres S.A. de C.V. v. Fairmount Heavy Transp., N.V., 572 F.3d 96, 108 (2d Cir. 2009).

The aim of assuring satisfaction underpins many of the principles behind setting only the necessary security to release a vessel. Indeed, "there is no need to tolerate the risk of abuse to ensure that a security in excess of the plaintiff's likely recovery may be maintained." Transportes, 572 F.3d at 109. Rule E(6) provides a safety valve of sorts to ensure a plaintiff has not unfairly exaggerated its claims and thereby "'work[ed] inestimable hardship' on the defendant . . . ." Transportes, 572 F.3d at 109 (quoting The Lotosland, 2 F. Supp. 42, 43 (E.D.N.Y. 1933))).

---

The demand for judgment in every complaint filed under Rule B or Rule C shall allege the dollar amount of the debt or damages for which the action was commenced. The demand for judgment shall also allege the nature of other items of damage. *The amount of the special bond posted under Rule E(5)(a) may be based upon these allegations.*

S.D. Ala. Civ. L.R. 104(E)(a) (emphasis added).

Courts should likewise avoid undervaluing a plaintiff's claim. "[A] problem might arise if the security is set at or reduced to an amount that is less than the value of the attached property if the security is insufficient to cover the eventual award." <u>Transportes</u>, 572 F.3d at 108. Amounts found to be "excessive[,]" <u>Dongbu Exp. Co. v. Navios Corp.</u>, 944 F. Supp. 235, 237 (S.D.N.Y. 1996), "unjustified[,]" <u>Techem Chem. Co. v. M/T Choyo Maru</u>, 416 F. Supp. 960, 971 (D. Md. 1976), or unavailable as a matter of law should be excised from the security. The Court now determines whether $3,758,580.32 includes claims that are either (1) unavailable as a matter of law or (2) unreasonable based on the facts. <u>See</u> <u>Transportes,</u> 572 F.3d at 106.

## III.  ANALYSIS

Rule E(6) begins with the qualification "[w]henever security is taken . . . ." Before Nikka secured the vessel's release via a letter of undertaking, the Court doubted whether the Rule envision a security's reduction – previously set – when security had not yet been yet.[3] Rule E(6) is now clearly available because Nikka has posted security and M/V SEA GLASS II has been released.

Rule E(6) requires "good cause" to reduce "the amount of security given . . . ." FED. R. CIV. P. SUPP. R. E(6). As "good cause," Nikka advances two primary arguments, one related to interest and the other related to attorneys' fees.

---

[3] The Second Circuit recently stated that "Where, as here, security is posted and a vessel is released, Rule E(6) empowers the court to reduce security." <u>Chemoil Adani PVT. LTD. v. M/V Mar. King</u>, No. 16-3944-CV, 2018 WL 3339788, at *2 (2d Cir. July 9, 2018). This language and sentence indicates Rule E(6) reduction powers arise only after security is posted and the is vessel released.  Other language tends to support this idea. <u>See</u> <u>e.g.</u>, <u>Transportes</u>, 572 F.3d at 101) ("*If security is taken by the court in lieu of attached property*, Rule E(6) maintains that" the court may reduce the amount given) (emphasis added).

As Nikka noted in its motion, the overwhelming majority of Rule E(6) cases arise in the Southern District of New York, where, for a brief period, courts routinely attached electronic fund transfers of which defendants were the beneficially. (Doc. 60 at 4 n. 5 (noting <u>Shipping Corp. of India Ltd. v. Jaldhi Overseas Pte Ltd.</u>, 585 F.3d 58 (2d Cir. 2009) overruled the earlier Second Circuit case which had endorsed that practice).

Before July 20, however, the Court had not taken any security in lieu of the vessel M/V SEA GLASS II. Instead, Nikka's motion basically urged the Court reconsider its original finding of d'Amico's "fairly stated" claim.

### a. Interest

D'Amico, in its opposition to Nikka's original motion to set a special bond, argued the English judgment should bear interest at 8% for nine years and 11 days. That contention is premised on d'Amico's assertion that the interest rate is a substantive question and should therefore be governed by English law. (Doc. 53 at 6). An English law, the Judgments Act 1838, sets interest at 8% per annum for unsatisfied judgments. Nikka disagrees and makes three main arguments related to interest:

(1) Post-judgment interest is procedural, which subjects the English judgment to the lower interest rate as set forth in 28 U.S.C. § 1961. (Doc. 60 at 5).

(2) D'Amico is not entitled to post-judgment interest against Nikka under English law. (Doc. 60 at 6).

(3) If the first two arguments fail, the English Limitation Act of 1980 precludes accrual of interest beyond Jun 20, 2015 (six years from the date the English judgment issued). It therefore argues that if the higher English interest rate of 8% applies, the interest should "cease[] to accumulate as of June 20, 2015 . . . ." (Doc. 60 at 6).

In support, Nikka attached Nicholas Parton's affidavit. Parton, an English Solicitor who has specialized in maritime and international trade law, averred that (1) the English Judgment dated June 19, 2009 was inapplicable to Nikka and (2) the judgment is time-barred against the actual judgment debtor, Primera. (Doc. 60-1 at 1 ¶ 3). D'Amico's affiant did not mention any time bar to executing judgments. Nor did Nikka mention any temporal limitation generally (and the Limitation Act 1980, section 24(1) specifically) in its original motion to approve substitute security. (Doc. 47).

D'Amico seeks to enforce a foreign judgment in a United States district court. As d'Amico points outs, cases Nikka cites – including <u>Nissho-Iwai Co. v. Occidental Crude Sales, Inc.</u>, 848 F.2d. 613, 624 (5th Cir. 1988) and <u>Continental Transfer Technique Ltd. v. Federal Government of Nigeria</u>, 850 F. Supp. 2d. 277, 287 (D.D.C. 2012) – involve interest applied after a United States district court entered judgment. Indeed, the statute itself refers to the date the district court enters judgment. 28 U.S.C. § 1961(a) ("Interest shall be allowed on any money judgment in a civil case recovered in a district court. . . . Such interest shall be calculated from the date of the entry of the judgment . . . ."). Thus, post-judgment interest, as referred to in § 1961, applies after a district court enters judgment. <u>FIGA v. R.V.M.P. Corp.</u>, 874 F.2d 1528, 1533 (11th Cir. 1989) (the "federal statute provid[es] interest on all federal court judgments"); Susan Margaret Payor, <u>Post-Judgment Interest in Federal Courts</u>, 37 EMORY L.J. 495, 499 (1988) ("section 1961 . . . provide[s] that judgment interest shall begin to run from the date of the *entry* of judgment in the district court") (emphasis in original). The statute mandates post-judgment interest on all judgments district courts enter. <u>Jack Henry & Assocs., Inc. v. BSC, Inc.</u>, 753 F. Supp. 2d 665, 667 (E.D. Ky. 2010), <u>aff'd,</u> 487 F. App'x 246 (6th Cir. 2012) ("Section 1961 uses mandatory language.") (Thapar, J.).

Nikka's argument that § 1961 imposes its interest on non-domestic judgments not yet enforced by a United States district court proves unpersuasive. To the extent Nikka argues the § 1961 rate of approximately 1% is mandated here, that simply is not so. <u>Soc'y of Lloyd's v. Reinhart</u>, 402 F.3d 982, 1005 (10th Cir. 2005) ("[T]he U.S. post-judgment interest rate applies to the district court's judgments, but not to the English court's judgments. The U.S. post-judgment rate should apply as of the date of the entry of the judgment in the U.S. district court.").

Having concluded § 1961 interest does not apply at this juncture, what interest rate should be applied to d'Amico's judgment? Several sources, including fellow district court caselaw and relevant conflict of laws commentators suggest interest dating from entry of foreign judgment until entry by a district court should be calculated pursuant to "the law of the place where it was rendered …." 2 J.H. Beale, A TREATISE ON THE CONFLICT OF LAWS § 420.1, at 1338 (1935). See e.g., Louis Dreyfus Commodities Suisse, SA v. Fin. Software Sys., Inc., 703 Fed. App'x 79, 85 (3d Cir. 2017) (affirming district court's imposition of U.K.'s eight-percent interest rate from entry of U.K. judgment until district court entry of judgment); Soc'y of Lloyd's v. Reinhart, 402 F.3d at 1005 (holding that U.K.'s 8% interest rate applies "from the entry of the English judgment . . . until the entry of the U.S. judgment enforcing the English judgment"). The U.K. Judgment Act 1838 provides for eight-percent annual interest on judgments. The Court therefore finds the English rate of 8% is includable as a fairly stated claim.[4]

Nikka did not cite any relevant caselaw for its proposition that "Nikka would only be liable for interest and legal fees if the Judgment was entered directly against Nikka as a defendant, or the Plaintiff obtained an Order from the English High Court to amend the English Judgment to include Nikka as the judgment debtor." (Doc. 60 at 6). Although uncited in Nikka's brief, Mr. Parton averred that even if the English judgment remained enforceable, under English law, Nikka's liability for interest and legal fees would only be available if the judgment was entered against it directly or if the judgment was amended to include Nikka. Mr. Parton did not cite to any authority to support his contention. Nikka's second argument does not constitute good cause.[5]

---

[4] This constitutes a preliminary determination and may not be the final judgment in the event d'Amico succeeds on its claim.
[5] For its part, d'Amico's affiant averred "there is no requirement under English law that d'Amico must have Nikka added as a defendant in the English judgment in order to enforce it against Nikka outside England. An English court

8

Finally, and for apparently the first time, Nikka contends that even if the 8% rate applies, another U.K. statute, the English Limitation Act of 1980, prevents interest from accruing beyond six years.[6] (Doc. 60 at 7-8). D'Amico disagrees. It argues "[t]hat the Act is procedural and not the substantive law of England . . ." (Doc. 77 at 8).

As Mr. Marshall, d'Amico's foreign law affiant, averred, the 8% rate "existed before the 2009 judgment . . . and has continued unamended through today." (Doc. 53-2 at ¶ 4). In his supplemental affidavit, Mr. Marshall averred that § 24(2) of the Act was designed to prevent claimants from delaying action to enforce judgment and then collecting interest beyond six years. (Doc. 77-1 at 9 ¶ 13 ("[§]24(2) of the Act is designed to provide a defendant a procedural defence in circumstances where the claimant delays more than 6 years to execute and then seeks interest after 6 years. The Act allows a defendant to prevent the claimant being awarded more than 6 years' worth of interest."). He further averred that § 24(2) "addresses only procedural remedies before the English courts. It does not address substantive rights." (Doc. 77-1 at 4 ¶ 6); see also id. ("The Act only applies to proceedings filed in England.").

In a conflict-of-laws situation "the forum will apply the foreign substantive law, but will follow its own rules of procedure." Bournias v. Atl. Mar. Co., 220 F.2d 152, 154 (2d Cir. 1955). Statutes of limitation, broadly, and the English Limitation Act of 1980, specifically, are regarded both by English and American courts as procedural in nature rather than substantive. The Dow Chemical Corp. v. Weevil–Cide Co., Inc., 897 F.2d 481, 483–84 (10th Cir. 1990) ("Statutes of limitation are generally regarded as procedural . . . ."); Bournias v. Atl. Mar. Co., 220 F.2d 152,

would view the foreign enforcement of its judgments solely as a matter for the relevant foreign court." (Doc. 77-1 at 9 ¶ 14).
[6] Nikka calculates interest, capped at six years at the 8% rate, at $848,200.88, meaning the current interest includes an "overcharge" of 418,147.02. (Doc. 60 at 6 n. 7).

154 (2d Cir. 1955) ("The general rule appears established that for the purpose of deciding whether to apply local law or foreign law, statutes of limitations are classified as 'procedural.'"); Gehling v. St. George Univ. Sch. of Med., Ltd., 698 F. Supp. 419, 425 (E.D.N.Y. 1988) ("English law holds most limitation periods to be procedural."); Sirko Harder, Statutes of Limitation Between Classification and Renvoi—Australian and South African Approaches Compared, 60 INT'L AND COMP. LAW Q., No. 3 659, 671 (July 2011) ("English law classif[ies] the Limitation Act 1980 (UK) as procedural, apart from a few exceptions . . . ."). Federal law therefore governs the inquiry regarding statutes of limitation.

D'Amico argues that the doctrine of laches applies. (Doc. 77 at 9 ("Because this is a maritime claim, the doctrine of laches applies.")). A federal court hearing a maritime case "must apply general federal maritime choice of law rules." Albany Ins. Co. v. Anh Thi Kieu, 927 F.2d 882, 890 (5th Cir. 1991). See e.g., Aqua-Marine Constructors, Inc. v. Banks, 110 F.3d 663, 670 (9th Cir. 1997) ("a federal court sitting in admiralty must apply federal maritime choice-of-law rules"). And admiralty actions are "controlled . . . by the doctrine of laches." Chantier Naval Voisin v. M/Y Daybreak, 677 F. Supp. 1563, 1569 (S.D. Fla. 1988) (Marcus, J.) (citing Azalea Fleet, Inc. v. Dreyfus Supply & Machinery Corp., 782 F.2d 1455, 1458 (8th Cir. 1986); Pierre v. Hess Oil Virgin Islands Corp., 624 F.2d 445, 450 (3d Cir. 1980)).

Nikka, however, did not raise the doctrine of laches' applicability in its motion to reduce security, and the Court declines to now assess its relevance. For the present purposes, the Court instead focuses on Nikka's argument that the English Limitation Act of 1980 limits interest to six years. (Doc. 60 at 6-7). Having preliminarily determined that it is procedural – not substantive – in nature, and does not cap interest on the English judgment to six years, Nikka's argument that the current security includes $418,147.02 of overcharged interest does not constitute good cause.

**b. Attorneys' Fees**

In setting the security, the Court found d'Amico's attorneys' fees ($725,953.88) to be fairly stated and included them. In support of that subtotal, d'Amico supplied Mr. Marshall's affidavit in which he swore that "as a matter of English law, d'Amico is entitled to recover . . . legal fees of at least $725.953.88 in its efforts to collect the English judgment." (Doc. 53-2 at 4 ¶ 9). Nikka's affiant, Mr. Parton on this subject, swore that "any claim for legal costs against Nikka is not permitted." (Doc. 60-1 at 2-3 ¶ 7). Mr. Parton also intimated that Mr. Marshall committed perjury. (Doc. 60-1 at 3 ¶ 8).

What's left is one affiant saying one thing and another affiant saying the opposite. Setting or reducing security entails a preliminary assessment of the plaintiff's reasonable damages, not a final determination. The Court finds that Nikka has not shown good cause to reduce the security amount to exclude attorneys' fees.

## IV. CONCLUSION

At present, attorneys' fees and interest constitute a majority of the $3,758,580.32 currently secured by the letter of undertaking. In fact, interest has almost surpassed the original English judgment. It's no wonder the parties vigorously dispute its inclusion.

The Court pauses to stress that this Order should not be perceived as any final decision or determination on the merits. However, the Court faced competing affidavits, contrary conclusions on foreign law's application (or lack thereof), and disagreement as to which law even applied. As a result, it erred on side of caution in declining to reduce the security. Rolls Royce Indus. Power (India) v. Fratzia M., 1995 WL 846690, at *11 (S.D.N.Y. July 24, 1995) (even on claims "which [the plaintiff] may lose on the merits[,]" the "proper course is to refrain

from disturbing the present attachment" of security). Indeed, a contrary ruling (i.e., attorneys' fees and 8% interest are not "fairly stated") might very well hamstring the ultimate decision.

Nikka's motion to reduce security (Doc. 60) is **DENIED**. The previously set security (Doc. 58) remains in full effect.

**DONE** the 10th day of August 2018.

/s/ Kristi K. DuBose
**KRISTI K. DuBOSE**
**CHIEF UNITED STATES DISTRICT JUDGE**