**THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

---------------------------------------------------------------x

d'AMICO DRY D.A.C. (f/k/a d'amico Dry Ltd.),   :
                                                         :

                       Plaintiff,        :

                                              : Civil Action:  1:18-cv-00284-KD-MU

          - against -          : IN ADMIRALTY

                                              :

NIKKA FINANCE INC.,                :

as owner of the SEA GLASS II,     :

                                              :

                     Defendants.     :

---------------------------------------------------------------x

**RESPONSE AND OPPOSITION
TO PLAINTIFF'S RENEWED MOTION TO COMPEL**

COMES NOW Nikka Finance Inc.[1] ("Nikka"), on behalf of the vessel M/V SEA GLASS II (the "Vessel"), as Defendant *in rem*, and files its Response and Opposition to the Renewed Motion to Compel filed by Plaintiff d'Amico Dry d.a.c. f/k/a d'Amico Dry Ltd. ("Plaintiff"). (ECF 129.)

**PRELIMINARY STATEMENT**

Nikka has fully complied with its discovery obligations under the Federal Rules of Civil Procedure, this Court's Orders and relevant case law. It has produced all responsive documents in its possession, custody and control, and has provided Declarations affirming the steps it took to search for the responsive documents and explained why certain documents were unavailable. Obviously dissatisfied with Nikka's full compliance, Plaintiff's motion wastes no time in resorting to the same kinds of smear-tactic allegations which have characterized all of its pleadings in this matter. In particular, Plaintiff vehemently contends that Nikka must be lying and the requested

---

[1] Nikka Finance, Inc. continues its restricted appearance pursuant to Supplemental Rule E(8), Fed.R.Civ.P.

documents must still exist because they perhaps once did, but Plaintiff fails to recognize that some

of these responsive documents were created in relation to a transaction that concluded nearly ten

years ago and, in reality, the documents no longer exist because of their age. In sum, Nikka has

fully complied with its discovery obligations and Plaintiff's motion must be denied in full.

## NIKKA'S RESPONSES TO PLAINTIFF'S DOCUMENT REQUESTS

On July 5, 2018, the Court issued an Order denying Nikka's Motion to Vacate the

attachment in this action. (ECF 40.) In the Order, the Court stated, in relevant part:

> D'Amico states, and Nikka does not dispute, that the relevant time
> period for analyzing dominion and control is between September 2,
> 2008, when d'Amico and Primera entered into the FFA and at the
> latest June 19, 2009 when the English Judgment was entered.
> Accordingly, the following analysis focuses on this time period.

(*Id.* at 13.)

On July 6, 2018, the Court issued an Expedited Rule 16(b) Scheduling Order. (ECF 46.)

Thereafter, on July 12, 2018, Plaintiff served its First Request for Production of Documents. On

August 8, 2018, Nikka served its Responses to Plaintiff's First Request for Documents.

On August 15, 2018, Plaintiff filed an emergency motion to compel. (ECF 87.) On August

16, 2018, this Court denied Plaintiff's motion and scheduled an informal hearing on August 20,

2018. (ECF 88.) Following the conference, the Court expanded the date range for discovery in this

matter to January 1, 2008 through December 31, 2011. In particular, by Order dated August 21,

2018, this Court ruled, in relevant part:

> During the informal conference on August 20, 2018, the Court also
> discussed issues related to d'Amico's first set of requests for
> production of documents served on Nikka. The undersigned simply
> memorializes the direction given to the parties in regard to the
> propounded production requests and any outstanding issues
> regarding those discovery requests. In particular, the undersigned
> finds that the appropriate date range for discovery in this matter is
> January 1, 2008 through December 31, 2011, with the exception that
> Nikka should produce a copy of the vessel building contract for the

2

> M/V SEA GLASS II regardless of when the contract was executed. This Court will not now or later deem Nikka to have waived its right to object to the propounded requests for production; however, the undersigned will require Nikka to search its warehouse (or storage facility) in Greece for additional records responsive to d'Amico's requests for production for the period January 1, 2008 through December 31, 2011. This additional search is to be conducted so that a supplemental response to d'Amico's propounded requests can be tendered not later than August 31, 2018.

(ECF 93 at 5-6.)

Pursuant to the Court's Order, Nikka conducted another extensive search for documents, having previously made an exhaustive search in 2015 when Plaintiff first requested similar documents in the related SDNY proceeding, which resulted in the production of over 5000 pages of records. Nikka also contacted two banks it had a relationship with during the time period in question – the first, HSH Nordbank, confirmed it has not received and does not retain independent audited Financial Statements for Nikka and the second bank is no longer in business.  On August 31, 2018, Nikka produced all available responsive documents. In particular, Nikka produced:

1. May 21, 2008 Facility Agreement (CONFIDENTIAL NIKKA000001- 109);
2. Letter dated October 15, 2008 amending certain terms of the Facility Agreement (CONFIDENTIAL NIKKA00110 – 115);
3. February 2009 Second Supplemental Loan Facility and Guarantee Facility Agreement (CONFIDENTIAL NIKKA00116 – 134);
4. September 11, 2009 Third Supplemental Loan Facility and Guarantee Facility Agreement (CONFIDENTIAL NIKKA 00135 – 153);
5. Contract for Construction and Sale of a Deadweight 29,100 DWT Bulk Carrier (Hull No. NK-002) between JBU Loggers Pte. Ltd., as Buyer, and Nakanishi Kikai Kogyosho Co., Ltd., as Builder, and Namirei Showa Co., Ltd., as Co-Builder (CONFIDENTIAL NIKKA00154 – 905);
6. January 29, 2009 Commercial Invoice addressed to Nikka Finance Inc. in the amount of $37,500,000 for the purchase of the Vessel (CONFIDENTIAL NIKKA00906);
7. October 21, 2008 Swift payment from HSH Nordbank confirming payment of USD32,075,000 to JBU Loggers Pte Ltd. for Hull NK0002 (CONFIDENTIAL NIKKA00907)

8. October 21, 2008 Protocol of Delivery and Acceptance confirming JBU Loggers Pte. Ltd. sold and delivered the Vessel to Nikka Finance Inc. (CONFIDENTIAL NIKKA00908);

9. June 24, 2008 Time Charter Party between Nikka Finance Inc. and Britannia Bulk PLC for the charter of the Vessel (CONFIDENTIAL NIKKA00909 – 937);

10. Annual Report & Accounts 2008 for Nikka Finance Inc. M/V SEAGLASS II (CONFIDENTIAL NIKKA00938 – 941);

11. February 21, 2011 Meeting of the Board of Directors of Bulknav Inc. (CONFIDENTIAL NIKKA00942);

12. May 19, 2010 Meeting of the Board of Directors of Bulknav Inc. (CONFIDENTIAL NIKKA00943);

13. February 23, 2009 Meeting of the Board of Directors of Bulknav Inc. (CONFIDENTIAL NIKKA00944);

14. October 15, 2009 Nikka Finance Inc. Resolutions of the Board of Directors appointing the President, Secretary and Director of the corporation (CONFIDENTIAL NIKKA00945);

15. October 15, 2009 Nikka Finance Inc. Resolutions of the Board of Directors appointing three directors of the corporation (CONFIDENTIAL NIKKA00946);

16. October 15, 2009 Letter of Appointment by George Papadopoulos (CONFIDENTIAL NIKKA00947);

17. October 15, 2009 Letter of Appointment by Niccolo Benvenuti (CONFIDENTIAL NIKKA00948);

18. October 16, 2009 Letter of Resignation by Paul Coronis confirming his resignation as Director of Nikka (CONFIDENTIAL NIKKA00949);

19. Annual Report & Accounts 2011 for Nikka Finance Inc. M/V SEAGLASS II (CONFIDENTIAL NIKKA00950 – 953);

20. Annual Report & Accounts 2010 for Nikka Finance Inc. M/V SEAGLASS II (CONFIDENTIAL NIKKA00954 – 957);

21. Annual Report & Accounts 2009 for Nikka Finance Inc. M/V SEAGLASS II (CONFIDENTIAL NIKKA00958 – 961);

22. Annual Report & Accounts 2008 for Nikka Finance Inc. M/V SEAGLASS II (CONFIDENTIAL NIKKA00962 – 965);

23. October 1, 2010 Invoice to Nikka Finance from the Marshall Islands requesting payment of the Tonnage Tax for the Vessel for the period of January 1, 2011 to December 31, 2011 (CONFIDENTIAL NIKKA00966);

24. The October 1, 2009 Invoice to Nikka Finance from the Marshall Islands requesting payment of the Tonnage Tax for the Vessel for the period of January 1, 2010 to December 31, 2010 (CONFIDENTIAL NIKKA00967);

25. Tonnage Tax Receipt for the period of January 1, 2010 to December 31, 2010 (CONFIDENTIAL NIKKA00968);

26. January 3, 2011 confirmation of insurance for the Vessel for underwriting year 2011 ((CONFIDENTIAL NIKKA00969 - 993);

27. September 27, 2010 confirmation of insurance for the Vessel for underwriting year 2010 (CONFIDENTIAL NIKKA00994 - 1004);

28. May 7, 2009 Shipmanagement Agreement between Nikka and Primebulk Shipmanagement Limited for the Vessel (CONFIDENTIAL NIKKA01005 - 1022);

29. June 30, 2011 Addendum No. 1 to the Shipmanagement Agreement (CONFIDENTIAL NIKKA01023);

30. September 5, 2007 Certificate of Incorporation of Nikka Finance Inc. (CONFIDENTIAL NIKKA01024);

31. September 5, 2007 Articles of Incorporation of Nikka Finance Inc. (CONFIDENTIAL NIKKA01025 - 1029);

32. Share Certificate confirming Bulknav Inc. is owner of Nikka Finance Inc. (CONFIDENTIAL NIKKA01030);

33. August 1, 2009 Time Charter between Nikka Finance Inc. and Qingdao Ocean Shipping Co. Ltd. for the Vessel (CONFIDENTIAL NIKKA01031 - 1035);

34. List of Nikka Finance employees (CONFIDENTIAL NIKKA01036 - 1039);

35. November 25, 2013 Certificate of Classification for the Vessel (CONFIDENTIAL NIKKA01040 - 1041);

36. January 27, 2009 Certificate of Classification for the Vessel (CONFIDENTIAL NIKKA01042 - 1043);

37. Primebulk Shipmanagement Ltd. correspondence (documents are in Greek) (CONFIDENTIAL NIKKA01044 - 1048);

38. Bank records for Nikka Finance Inc. (documents are in Greek) (CONFIDENTIAL NIKKA01049 - 1207);

39. February 21, 2011 Meeting of the Board of Directors of Bulknav Inc. (CONFIDENTIAL NIKKA01208);

40. May 19, 2010 Meeting of the Board of Directors of Bulknav Inc. (CONFIDENTIAL NIKKA01209);

41. February 23, 2009 Meeting of the Board of Directors of Bulknav Inc. (CONFIDENTIAL NIKKA01210);

42. That May 19, 2010 Resolution of the Board of Directors of Bulknav approving new directors for Bulknav (CONFIDENTIAL NIKKA01211);

43. April 19, 2010 Resolution of the Board of Directors of Bulknav approving new directors for Bulknav (CONFIDENTIAL NIKKA01212);

44. July 30, 2009 Bulknav Board of Director Meeting Minutes confirming Bulknav would execute a Guarantee as security for the obligations of the Borrowers under the May 21, 2008 Facility Agreement and the May 21, 2008 Master Agreement (CONFIDENTIAL NIKKA01213 - 1214);

45. September 11, 2009 Indemnity Letter from Bulknav Inc. to Primebulk Shipmanagement Ltd. regarding the Corporate Guarantee provided by Primebulk in favor of the Lenders in relation to the obligations of the Borrowers under the Facility Agreement (CONFIDENTIAL NIKKA01215 - 1216);

46. Certificate of Good Standing for Bulknav Inc. (CONFIDENTIAL NIKKA01217);

47. Invoice dated January 7, 2015 addressed to Bulknav Inc. for the Annual Corporation Maintenance Fee for the period of February 19, 2015 to February 18, 2016 (CONFIDENTIAL NIKKA01218);

48. Invoice dated January 7, 2014 addressed to Bulknav Inc. for the Annual Corporation Maintenance Fee for the period of February 19, 2014 to February 18, 2015 (CONFIDENTIAL NIKKA01219);

49. Invoice dated January 8, 2013 for Bulknav's Annual Corporation Maintenance Fee for the period of February 19, 2013 to February 18, 2014 (CONFIDENTIAL NIKKA01220);

50. Invoice dated January 9, 2012 for Bulknav's Annual Corporation Maintenance Fee for the period of February 19, 2012 to February 18, 2013 (CONFIDENTIAL NIKKA01221);

51. Invoice dated January 9, 2009 for Bulknav's Annual Corporation Maintenance Fee for the period of February 19, 2009 to February 18, 2010 (CONFIDENTIAL NIKKA01222);

52. Invoice dated January 10, 2011 for Bulknav's Annual Corporation Maintenance Fee for the period of February 19, 2011 to February 18, 2012 (CONFIDENTIAL NIKKA01223);

53. Articles of Amendment of Bulknav Inc. (CONFIDENTIAL NIKKA01224 - 1225);

54. Certificate of Incorporation for Bulknav Inc. (CONFIDENTIAL NIKKA01226);

55. Bulknav Inc. Common Stock Master Register dated September 25, 2008 (CONFIDENTIAL NIKKA01227)

On September 6, 2018, the Parties attended a formal hearing before Magistrate Judge Murray concerning outstanding discovery disputes in this case. At the hearing, Judge Murray allowed Plaintiff to propound five additional requests for production to Nikka focused on the ownership of the SEA GLASS II. (ECF 107, fn 4.) Judge Murray also asked Nikka to provide an affidavit from somebody with knowledge of the search to explain what Nikka did to search its records for documents that are responsive to Plaintiff's request for production. (*See* Sept. 6, 2018

Tr. at 49:3-15) (ECF 107 at 6.) On September 7, 2018, Plaintiff served its Second Set of Requests

for Production to Nikka. Those requests included:

1.  All documents relating to Nikka's purchase and/or acquisition of the M/V SEAGLASS II, including but not limited to all contracts, agreements, memoranda, any addenda, supplements, riders and/or amendments thereto, Memoranda of Agreements (dated January 10, 2007 or any other dates), financial documents, arrangements, and disclosures.

2.  All documents provided to or by Nikka to effect or in connection with the closing of Nikka's purchase, acquisition and delivery of the M/V SEAGLASS II, including but not limited to acceptance of delivery, receipt of or for delivery, financial documents and/or disclosures, means of payment therefor.

3.  All evidence of payments made directly or indirectly by or on behalf of Nikka for the purchase, acquisition and delivery of the M/V SEAGLASS II.

4.  All documents evidencing the registered, actual and "beneficial" ownership of Nikka from January 1, 2008 through December 31, 2011.

On September 25, 2018, Nikka served its Responses to Plaintiff's Second Set of Requests

for Documents. Nikka's Responses provided:

1.  All documents relating to Nikka's purchase and/or acquisition of the M/V SEAGLASS II, including but not limited to all contracts, agreements, memoranda, any addenda, supplements, riders and/or amendments thereto, Memoranda of Agreements (dated January 10, 2007 or any other dates), financial documents, arrangements, and disclosures.

    **RESPONSE:** Objection is made to the impermissibly broad caveat placed on this request ("All documents relating to …,"), which makes the inquiry unreasonably burdensome, and outside the scope of reasonable discovery contemplated by Rule 26, Fed. R. Civ. P. Notwithstanding the foregoing objection, and based on diligent, good faith efforts, no documents otherwise responsive to this request are being withheld from production. **See documents bate stamped Nikka 00001-00905.**

2. All documents provided to or by Nikka to effect or in connection with the closing of Nikka's purchase, acquisition and delivery of the M/V SEAGLASS II, including but not limited to acceptance of delivery, receipt of or for delivery, financial documents and/or disclosures, means of payment therefor.

**RESPONSE:** Objection is made to the impermissibly broad caveat placed on this request ("All documents provided …,"), which makes the inquiry unreasonably burdensome, and outside the scope of reasonable discovery contemplated by Rule 26, Fed. R. Civ. P. Notwithstanding the foregoing objection, and based on diligent, good faith efforts, no documents otherwise responsive to this request are being withheld from production. **See documents bate stamped Nikka 00906-00908 and Bill of Sale attached hereto bate stamped Nikka 01228.**

3. All evidence of payments made directly or indirectly by or on behalf of Nikka for the purchase, acquisition and delivery of the M/V SEAGLASS II.

**RESPONSE:** Objection is made to the impermissibly broad caveat placed on this request ("All evidence of …,"), which makes the inquiry unreasonably burdensome, and outside the scope of reasonable discovery contemplated by Rule 26, Fed. R. Civ. P. Notwithstanding the foregoing objection, and based on diligent, good faith efforts, no documents otherwise responsive to this request are being withheld from production. **See documents bate stamped Nikka 00906-00908 and Bill of Sale attached hereto bate stamped Nikka 01228.**

4. All documents evidencing the registered, actual and "beneficial" ownership of Nikka from January 1, 2008 through December 31, 2011.

**RESPONSE:** Objection is made to the impermissibly broad caveat placed on this request ("All documents evidencing …,"), which makes the inquiry unreasonably burdensome, outside the scope of reasonable discovery contemplated by Rule 26, Fed. R. Civ. P. Notwithstanding the foregoing objection, and based on diligent, good faith efforts, no documents otherwise responsive to this request are being withheld from production. **See documents bate stamped Nikka 00906-00908, Nikka 01024 - 01030 and Bill of Sale attached hereto bate stamped Nikka 01228.**

A copy of Nikka's Responses to Plaintiff's Second Set of Requests for Production is attached hereto as Ex. A. On September 25, 2018, Nikka also made a supplemental document production,

which included the Bill of Sale for the Vessel from JBU Loggers Pte. Ltd. to Nikka Finance Inc., which was bates stamped CONFIDENTIAL NIKKA01228, and five cancelled bearer shares No. 1 through 5 for Nikka Finance, Inc., which were bates stamped CONFIDENTIAL NIKKA01229-1233.

Moreover, pursuant to the Court's September 7, 2018 Order, Nikka provided a Declaration from Evangelos Bairactaris, the Greek attorney who represented Nikka in the purchase of the Vessel. Mr. Bairactaris stated:

> 1.   I am the Managing Partner of the law firm Bairactaris & Partners in Piraeus, Greece, which acted as counsel for Nikka Finance Inc. ("Nikka") in relation to the purchase of the M/V SEAGLASS II in 2007-2008.
>
> 2.   My Firm acts for many shipping companies in Greece and abroad in relation to the sale and purchase of merchant vessels. Since its inception, I would estimate that my Firm has acted as counsel to either a buyer or a seller of merchant vessels in more than a thousand transactions.
>
> 3.   My Firm was involved in the drafting and negotiation of the documents in connection with Nikka's purchase of the SEA GLASS II.  As such, on September 10, 2018, Nikka asked whether I could locate the following documents in my records:
>
> > a)   All documents relating to Nikka's purchase and/or acquisition of the M/V SEAGLASS II, including but not limited to all contracts, agreements, memoranda, any addenda, supplements, riders and/or amendments thereto, Memorandum of Agreement (dated January 10, 2007 or any other dates), financial documents, arrangements, and disclosures.
> >
> > b)   All documents provided to or by Nikka to effect or in connection with the closing of Nikka's purchase, acquisition and delivery of the M/V SEAGLASS II, including but not limited to acceptance of delivery, receipt of or for delivery, financial documents and/or disclosures, means of payment therefor.

4.      I have checked my Firm's archives and cannot locate any of the above documents relating to Nikka's purchase of the SEA GLASS II since the transaction concluded nearly ten years ago. It is the Firm's policy not to retain documents for more than five years, which exceeds the requirements imposed by Greek law applicable to retention of documents by Greek law firms.

*See* Declaration of Evangelos Bairactaris dated September 14, 2018 attached hereto as Ex. B.

Nikka also provided a letter from HSH Nordbank, which stated:

Nikka Finance Inc. is a client of our Bank on a depository, operational and lending basis since 2008.

The cooperation has been conducted to our entire satisfaction. During this period we have not received and do not retain independent audited Financial Statements for Nikka Finance Inc.

*See* Letter HSH Nordbank dated September 17, 2018, which is attached hereto as Ex. C.

Finally, Paul Coronis provided a Declaration confirming the efforts Nikka made "to search its warehouse (or storage facility) in Greece for additional records responsive to d'Amico's requests for production for the period January 1, 2008 through December 31, 2011," as required by this Court's September 7, 2018 Order.[2] Mr. Coronis confirmed:

---

[2] The Court found Mr. Coronis's Declaration met the requirements the Court set forth in its September 7, 2018 Order. In particular, at the October 5, 2018 informal conference, the Court stated:

[I]n the Court's view, the affidavit wasn't the greatest affidavit, but it did hit the marks that the Court -- the Court set out there which were -- I mean, I didn't -- I mean, it said do these basic things and provide a single affiant document that sets out what happened and where you looked and what you got and if you didn't get something why you didn't get it. And, again, although it's not going to win any awards, it did hit those marks. And I think the things that d'Amico wants to see in the affidavit are -- go beyond what this Court asks the affiant to put in that document. So if d'Amico wants more out of the affidavit, you're going to have to include that in your motion to compel also.

1.      I am over the age of eighteen, and have personal knowledge of the proceedings before this Honorable Court and the proceedings pending before Judge Koeltl in the Southern District of New York (hereinafter the "New York Action") wherein d'Amico Dry D.A.C. ("d'Amico") seeks, in both matters, to recover an English Judgment issued in June 2009 against Primera Maritime (Hellas) Ltd. ("Primera") on the allegation that Nikka is an alter ego of Primera. Likewise, I have personal knowledge of the contents of this Declaration.

2.      I provide this Declaration to identify the steps taken by Nikka to respond to d'Amico's Requests for the Production of Documents.

3.      d'Amico requested documents from Nikka for the first time in August 2015 in the New York Action.

4.      I directed my personal assistant at the time, who in turn directed several employees of Primebulk Shipmanagement, the managers of the SEA GLASS II, to search Nikka's records for documents responsive to d'Amico's requests. I understand that no less than two searches for the responsive documents were made.

5.      Most of Nikka's responsive documents were located. Some documents were with the manager and some, given the age of the requested documents, were in storage. The requested records that were not located in storage were presumed discarded due to their age.

6.      Nikka's responsive documents were produced in the New York Action as part of a production that included over 5,000 corporate records including, but not limited to, annual board minute reports, charterparties, insurance policies, tax filings, financial accounts and bank records.

7.      During a discovery hearing held on October 20, 2015 in the New York Action, Judge Koeltl addressed the issue of spoliation, stating "Your chronology is actually helpful to me because it reflects the fact that your clients did come into the case later. So any issues of spoliation would not really be an issue with respect to documents going back to 08' or 09'." See transcript excerpt attached hereto as Exhibit A.

---

(*See* October 5, 2018 Tr. 15:5-18.)

8.      Notwithstanding the prior exhaustive search for records in the New York Action, Nikka, in this action, made significant efforts to search for records requested by d'Amico, including: (i) conducting a further search for records in storage; (ii) contacting the law firm that represented Nikka in the purchase of the SEA GLASS II; (iii) contacting banks; and, (iv) contacting the P&I Club the SEA GLASS II was entered with in 2008 and 2009.

9.      After conducting a further search for records, as noted in paragraph 8, Nikka was able to locate the shipbuilding contract and technical specification for the SEA GLASS II, the  commercial invoice addressed to Nikka for the purchase of the SEA GLASS II, a copy of the Bill of Sale issued to Nikka for the purchase of the SEA GLASS II, evidence of payment for the purchase of the Vessel, and copies of canceled bearer stock certificates No. 1 through 5 for Nikka Finance for the period prior to September 2008. A majority of the documents requested in this action were previously produced in the New York Action. No other documents requested by d'Amico, other than the ones identified in paragraph 9, could be located.

10.      The Managing Director of the law firm who represented Nikka in the purchase and drafting of documents for the SEA GLASS II provided a Declaration stating the law firm could not "locate any of the above documents relating to Nikka's purchase of the SEA GLASS II since the transaction concluded nearly ten years ago. It is the Firm's policy not to retain documents for more than five years, which exceeds the requirements imposed by Greek law applicable to retention of documents by Greek law firms." A copy of the Declaration of Evangelos Bairactaris is attached hereto as Exhibit B.

11.      HSH Nordbank, the bank that provided financing for the purchase of the SEA GLASS II, also provided a letter which confirmed that the bank did not receive audited financial statements for Nikka. A copy of HSH Nordbank's letter is attached hereto as Exhibit C.

12.      The P&I Club has not responded to the request for copies of the 2008 and 2009 entries.

*See* Declaration of Paul Coronis dated September 27, 2018 attached hereto as Ex. D; see also ECF

120.

On October 5, 2018, the Parties attended an informal hearing before Judge Murray to discuss issues related to scheduling and discovery.  At the hearing, Nikka's counsel confirmed Nikka diligently searched for and produced all responsive documents. In response, the Court stated:

> THE COURT: Right. And I now recall I read the reference to Judge Koeltl's conclusion on that. And the lawyer's either submitted an affidavit or something. He talked about we're ten years outside of that and the obligation is to keep it for five. So he kept it for however long he does, but he doesn't have it anymore. I think what Mr. Bennett said is well put and it's accurate. And from the d'Amico side, y'all are just going to have to understand that you'll have to put it in a motion to compel at this point. But truly, the -- you know, I can't make them have something they don't have. So the assertion from Nikka that they don't have it is legitimate at this stage. So I'm not going to ask them to do anything different from that outside of what you may want to present in your motion to compel.

(*See* October 5, 2018 Tr., 19:17-25; 20:1-6.)

On October 9, 2018, Plaintiff filed its Second Motion to Compel. (ECF 129.)

## **ARGUMENT**

**A.**   **Nikka Has Fully Complied With its Discovery Obligations Under the Federal Rules of Civil Procedure and This Court's Orders**

Plaintiff's Motion to Compel must be denied because Nikka has properly responded to and objected to Plaintiff's Requests for Production; provided Declarations explaining the steps it took to uncover responsive documents and the reasons why certain responsive information is unavailable; and produced all responsive documents in its possession, custody or control.

1.   Nikka Has Not Waived Its Objections and Responses to Plaintiff's Requests for Production

Nikka admits its Responses and Objections to Plaintiff's First Request for Production were served in 28 days, instead of the 20 days, as required by the Expedited Rule 16(b) Scheduling

Order. (ECF 46, at 3.) Nikka never waived its right to object to the propounded discovery and respectfully apologies to this Honorable Court for the unintentional oversight.

However, Plaintiff's argument that Nikka's Responses and Objections have been waived is contrary to this Court's August 21, 2018 Order, wherein the Court stated it "will not now or later deem Nikka to have waived its right to object to the propounded requests for production . . ." (ECF 93, 5). In any event, Plaintiff has suffered no prejudice because, notwithstanding the objections, Nikka has complied with the Fed. R. Civ. P. 34 and has produced all responsive documents in its possession, custody and control.

   2.   Nikka Did Not Misinterpret the Relevant Time Period Noted in the Court's July 5, 2018 Order

In attempting to argue otherwise, Plaintiff admits Nikka's interpretation of the Court's clear statement in the July 5, 2018 Order (ECF 40) is correct.  As stated at p. 9 of Plaintiff's brief (ECF 129), "the Court indeed stated that 'the relevant time period for analyzing dominion and control is between September 2, 2008, when d'Amico and Primera entered into the FFA and at the latest June 19, 2009 when the English Judgment was entered.' (Doc. 40 at p. 13.)" In fact, it was not until the informal conference on August 20, 2018, and the Court's August 21, 2018 Order entered thereafter, that the date range for discovery in this matter was expanded to January 1, 2008 through December 31, 2011, with the exception that Nikka should produce a copy of the vessel building contract for the M/V SEA GLASS II regardless of when the contract was executed. (ECF 93 at 5.) Indeed, pursuant to the Court's August 21, 2018 Order, Nikka conducted another extensive search for documents, , having previously made an exhaustive search in 2015 when Plaintiff first requested similar documents in the related SDNY proceeding, which resulted in the production of over 5000 pages of records. Nikka also contacted two banks it had a relationship with during the time period in question; the first, HSH Nordbank, confirmed it has not received and does not retain

independent audited Financial Statements for Nikka and the second bank is no longer in business. Nikka has produced all responsive documents it has in its possession, custody and control.

       3.    <u>Nikka's Relevancy Objections Are Proper</u>

Plaintiff's contention that Nikka's responses and objections to Requests 13 and 22 seeking production of the vessel building contract and payments to Primera or Primebulk for services related to the Vessel on relevancy grounds is disingenuous. (ECF 129, at 10.)

First, Nikka' objection to the relevancy of the shipbuilding contract for the Vessel (Request 13) was based on the fact that the contract is dated October 30, 2006, and falls outside of the previously identified time period of September 2, 2008 and June 19, 2009, which this Court noted was the relevant time period for analyzing dominion and control of Primera over Nikka. (ECF 40.) Notwithstanding the objection, Nikka produced the shipbuilding contract. *See* CONFIDENTIAL NIKKA00154 – 905.

Second, Nikka properly objected to Request 22, seeking "copies of all invoices and payments to Nikka and/or Bulknav for charter hire for the M/V SEAGLASS II from 2008 to the present." In its response, Nikka again objected to the scope of the request to the extent it seeks documents outside of the relevant time period stated in the Court's July 5, 2018 Order. (ECF 40). Moreover, tellingly, Plaintiff fails to inform the Court of Nikka's further response to Request 22, which provides:

> Further, Nikka did not receive invoices for charter hire for the M/V SEAGLASS II. In addition, the payment of charter hire is irrelevant to the issue of whether Primera had dominion and control over Nikka. Notwithstanding the objections, charter hire for the charter of the M/V SEAGLASS was controlled by the terms and conditions of the Facilities Agreement, which Plaintiff possesses. Notwithstanding the objection, and without waiving the right to claim that discovery is limited to the time period of September 2, 2008 to June 19, 2009, the requested documents were previously produced in the action pending in the United States District Court

15

for the Southern District of New York, bearing the style: "d'Amico
Dry Ltd v. Primera Mar. (Hellas) Ltd, et. al, Case No. 09-CV-7840
(JGK). See documents bate stamped BR00754-1081.

Based on the above, Plaintiff's argument is moot and should be denied because Nikka has
already produced a copy of the responsive documents in this action.

**B.**     **Nikka Has Already Produced All Responsive Documents in its Possession, Custody,
and Control**

Rule 34 requires Nikka to search for and produce all responsive documents in its
possession, custody, or control. Fed. R. Civ. P. 34. As this Court noted in its September 7, 2018
Order, responsive documents include "information the responding party can obtain on demand, for
instance, from its bank, accountant, or affiliated corporations." *See, e.g., ANZ Advanced
Technologies, LLC v. Bush Hog*, LLC, 2011 WL 814663, *9 (S.D. Ala. Jan. 26, 2011) ("[A]
corporate party may be required to produce documents within the possession, custody, or control
of a sister corporation or other corporate affiliate. For purposes of Fed.R.Civ.P. 34, 'control' can
exist even if the documents are physically located with a corporate party's affiliate. . . . "'[C]ontrol
over a corporate affiliate's documents is not equivalent to 'piercing the corporate veil.' . . . Rather,
'control' has been 'construed broadly by the courts' to include not just a legal right, but also a
'practical ability to obtain the materials' on demand. . . . The 'specific form of the corporate relative
does not matter,' rather, practical considerations such as 'common relationships' and shared
ownership or management dictate whether a party can be held responsible for production of its
affiliate's materials."). (ECF 107.)

During the September 6, 2018 hearing, Judge Murray reiterated this definition of "control"
when he stated:

> [Nikka] needs to produce what's responsive; and that is, what is in
> your control. And what's in your control includes what you can

demand from people who are related to you, whether that is an accountant, a banker. (Sept. 6, 2018 Tr. 47:21-25.)

\*\*\*

But if Nikka has it, you got to – they've got to produce it as a group document or in a group of other entities that might be involved in that financial statement or that transaction. They've got to produce it. But on the other side of that coin is – let's say the -- Nikka doesn't have it. Then this Court does not expect it to go -- and let's just use an example – let's say it's something Bulknav has. They don't have to go to Bulknav and say, look. We got a -- I mean, that's -- unless it's within -- operating under the rule that says if you're able to get it on demand, that's fine. But you don't have to -- I mean, if they don't have the Bulknav documents, they don't have them. And they're not Bulknav. (Sept. 6, 2018 Tr. 50:19-25; 51:1-6.)

Moreover, in the September 7, 2018 Order, the Court highlighted the following non-exhaustive list of documents that are relevant, responsive and proportional in this case and should be produced by Nikka if not already produced or, otherwise, Nikka should explain in its affidavit why the information cannot be produced:

1. payments to employees of Nikka;
2. invoices and payments to Primera and Primebulk for ship-management services;
3. Nikka's bylaws, shareholder minutes, and share certificates;
4. loans to/from Nikka, including any intercompany loans;
5. Nikka's tax returns;
6. P&I/Hull policies for 2008, 2009 and part of 2010;
7. written communications with Primera and Primebulk regarding the SEA GLASS II;
8. records relied on by Nikka regarding ownership of Primera;
9. records establishing the ownership of Nikka;
10. any communications with HSH Nordbank to allow Primera and Primebulk to be the managers of SEAGLASS II; and
11. the July 10, 2007 MOA for Nikka's purchase of the SEAGLASS II, with addenda.

(ECF 107, fn 5.)

*First*, the accompanying declarations of Evangelos Bairactaris and Paul Coronis, (Exs. B and D respectively), and the letter from HSH Nordbank, (Ex. C), as summarized above, make clear

that Nikka has fully complied with Rule 34 and this Court's Orders, which required Nikka to make a reasonable search of all sources likely to contain responsive documents and produce all such responsive documents in its control, including conducting a further exhausted search for documents in storage; searching for documents in the possession of Primebulk, the manager of the SEA GLASS II; contacting Nikka's bank; contacting the lawyer who was involved in the drafting and negotiations of the documents in connection with Nikka's purchase of the Vessel; and contacting the P&I Club the SEA GLASS II was entered with in 2008 and 2009. (ECF 107; 128.)

*Second*, since 2015, Plaintiff has in its possession over 5,000 pages of documents in the control of and previously produced by Nikka's "sister corporation or other corporate affiliates," including Sonic Finance Inc., Mirage Finance Inc., Handy Finance Inc., Pasha Finance Inc., Movida Finance Inc., Element Finance Inc., Caldera Marine Co. Ltd., Adalia Marine Co. Ltd., Seasatin Navigation Inc., Annamar Navigation Inc., Seasafe Navigation Inc., Chemnav Inc., Primebulk Shipmanagement Ltd., Bulknav Inc. and Chemnav Shipmanagement Ltd., in the related Southern District of New York proceeding. Nikka cited to these previously produced documents in its August 8, 2018 Response to Plaintiff's First Request for Production of Documents.

*Third*, Nikka has already produced many of the documents responsive to the information noted in footnote 5 of the Court's September 7, 2018 Order, (ECF 107, fn 5), including:

1. Invoices and payments to Primera and Primebulk for ship-management services:
   a. Bank records for Nikka Finance Inc. (documents are in Greek) (CONFIDENTIAL NIKKA01049 - 1207)
2. Nikka's bylaws, shareholder minutes, and share certificates:
   a. February 21, 2011 Meeting of the Board of Directors of Bulknav Inc. (CONFIDENTIAL NIKKA00942);
   b. May 19, 2010 Meeting of the Board of Directors of Bulknav Inc. (CONFIDENTIAL NIKKA00943);
   c. February 23, 2009 Meeting of the Board of Directors of Bulknav Inc. (CONFIDENTIAL NIKKA00944);

    d. October 15, 2009 Nikka Finance Inc. Resolutions of the Board of Directors appointing the President, Secretary and Director of the corporation (CONFIDENTIAL NIKKA00945);

    e. October 15, 2009 Nikka Finance Inc. Resolutions of the Board of Directors appointing three directors of the corporation (CONFIDENTIAL NIKKA00946);

    f. October 15, 2009 Letter of Appointment by George Papadopoulos (CONFIDENTIAL NIKKA00947);

    g. October 15, 2009 Letter of Appointment by Niccolo Benvenuti (CONFIDENTIAL NIKKA00948);

    h. October 16, 2009 Letter of Resignation by Paul Coronis confirming his resignation as Director of Nikka (CONFIDENTIAL NIKKA00949)

3. Loans to/from Nikka, including any intercompany loans:

    a. May 21, 2008 Facility Agreement (CONFIDENTIAL NIKKA000001- 109;

    b. Letter dated October 15, 2008 amending certain terms of the Facility Agreement (CONFIDENTIAL NIKKA00110 – 115);

    c. February 2009 Second Supplemental Loan Facility and Guarantee Facility Agreement (CONFIDENTIAL NIKKA00116 – 134);

    d. September 11, 2009 Third Supplemental Loan Facility and Guarantee Facility Agreement (CONFIDENTIAL NIKKA 00135 – 153);

    e. Annual Report & Accounts 2008 for Nikka Finance Inc. M/V SEAGLASS II (CONFIDENTIAL NIKKA00938 – 941);

    f. Annual Report & Accounts 2011 for Nikka Finance Inc. M/V SEAGLASS II (CONFIDENTIAL NIKKA00950 – 953);

    g. Annual Report & Accounts 2010 for Nikka Finance Inc. M/V SEAGLASS II (CONFIDENTIAL NIKKA00954 – 957);

    h. Annual Report & Accounts 2009 for Nikka Finance Inc. M/V SEAGLASS II (CONFIDENTIAL NIKKA00958 – 961);

    i. Annual Report & Accounts 2008 for Nikka Finance Inc. M/V SEAGLASS II (CONFIDENTIAL NIKKA00962 – 965)

4. Nikka's tax returns:

    a. October 1, 2010 Invoice to Nikka Finance from the Marshall Islands requesting payment of the Tonnage Tax for the Vessel for the period of January 1, 2011 to December 31, 2011 (CONFIDENTIAL NIKKA00966);

    b. The October 1, 2009 Invoice to Nikka Finance from the Marshall Islands requesting payment of the Tonnage Tax for the Vessel for the period of January 1, 2010 to December 31, 2010 (CONFIDENTIAL NIKKA00967);

    c. Tonnage Tax Receipt for the period of January 1, 2010 to December 31, 2010 (CONFIDENTIAL NIKKA00968)

5. P&I/Hull policies for 2008, 2009 and part of 2010:

    a. January 3, 2011 confirmation of insurance for the Vessel for underwriting year 2011 ((CONFIDENTIAL NIKKA00969 - 993);

   b. September 27, 2010 confirmation of insurance for the Vessel for underwriting year 2010 (CONFIDENTIAL NIKKA00994 - 1004)

6. Written communications with Primera and Primebulk regarding the SEA GLASS II:

   a. May 7, 2009 Shipmanagement Agreement between Nikka and Primebulk Shipmanagement Limited for the Vessel (CONFIDENTIAL NIKKA01005 - 1022);

   b. June 30, 2011 Addendum No. 1 to the Shipmanagement Agreement (CONFIDENTIAL NIKKA01023);

   c. Primebulk Shipmanagement Ltd. correspondence (documents are in Greek) (CONFIDENTIAL NIKKA01044 - 1048)

7. Records establishing the ownership of Nikka:

   a. September 5, 2007 Certificate of Incorporation of Nikka Finance Inc. (CONFIDENTIAL NIKKA01024);

   b. September 5, 2007 Articles of Incorporation of Nikka Finance Inc. (CONFIDENTIAL NIKKA01025 - 1029);

   c. Share Certificate confirming Bulknav Inc. is owner of Nikka Finance Inc. (CONFIDENTIAL NIKKA01030);

   d. February 21, 2011 Meeting of the Board of Directors of Bulknav Inc. (CONFIDENTIAL NIKKA01208);

   e. May 19, 2010 Meeting of the Board of Directors of Bulknav Inc. (CONFIDENTIAL NIKKA01209);

   f. February 23, 2009 Meeting of the Board of Directors of Bulknav Inc. (CONFIDENTIAL NIKKA01210);

   g. May 19, 2010 Resolution of the Board of Directors of Bulknav approving new directors for Bulknav (CONFIDENTIAL NIKKA01211);

   h. April 19, 2010 Resolution of the Board of Directors of Bulknav approving new directors for Bulknav (CONFIDENTIAL NIKKA01212);

   i. July 30, 2009 Bulknav Board of Director Meeting Minutes confirming Bulknav would execute a Guarantee as security for the obligations of the Borrowers under the May 21, 2008 Facility Agreement and the May 21, 2008 Master Agreement (CONFIDENTIAL NIKKA01213 - 1214);

   j. Certificate of Good Standing for Bulknav Inc. (CONFIDENTIAL NIKKA01217);

   k. Invoice dated January 7, 2015 addressed to Bulknav Inc. for the Annual Corporation Maintenance Fee for the period of February 19, 2015 to February 18, 2016 (CONFIDENTIAL NIKKA01218);

   l. Invoice dated January 7, 2014 addressed to Bulknav Inc. for the Annual Corporation Maintenance Fee for the period of February 19, 2014 to February 18, 2015 (CONFIDENTIAL NIKKA01219);

m.  Invoice dated January 8, 2013 for Bulknav's Annual Corporation Maintenance Fee for the period of February 19, 2013 to February 18, 2014 (CONFIDENTIAL NIKKA01220);

n.  Invoice dated January 9, 2012 for Bulknav's Annual Corporation Maintenance Fee for the period of February 19, 2012 to February 18, 2013 (CONFIDENTIAL NIKKA01221);

o.  Invoice dated January 9, 2009 for Bulknav's Annual Corporation Maintenance Fee for the period of February 19, 2009 to February 18, 2010 (CONFIDENTIAL NIKKA01222);

p.  Invoice dated January 10, 2011 for Bulknav's Annual Corporation Maintenance Fee for the period of February 19, 2011 to February 18, 2012 (CONFIDENTIAL NIKKA01223);

q.  Articles of Amendment of Bulknav Inc. (CONFIDENTIAL NIKKA01224 - 1225);

r.  Certificate of Incorporation for Bulknav Inc. (CONFIDENTIAL NIKKA01226);

s.  Bulknav Inc. Common Stock Master Register dated September 25, 2008 (CONFIDENTIAL NIKKA01227)

The following documents were also produced establishing Nikka's ownership of the Vessel:

1.  Contract for Construction and Sale of a Deadweight 29,100 DWT Bulk Carrier (Hull No. NK-002) between JBU Loggers Pte. Ltd., as Buyer, and Nakanishi Kikai Kogyosho Co., Ltd., as Builder, and Namirei Showa Co., Ltd., as Co-Builder (CONFIDENTIAL NIKKA00154 – 905);

2.  January 29, 2009 Commercial Invoice addressed to Nikka Finance Inc. in the amount of $37,500,000 for the purchase of the Vessel (CONFIDENTIAL NIKKA00906);

3.  October 21, 2008 Swift payment from HSH Nordbank confirming payment of USD32,075,000 to JBU Loggers Pte Ltd. for Hull NK0002 (CONFIDENTIAL NIKKA00907)

4.  October 21, 2008 Protocol of Delivery and Acceptance confirming JBU Loggers Pte. Ltd. sold and delivered the Vessel to Nikka Finance Inc. (CONFIDENTIAL NIKKA00908);

5.  Bill of Sale for the Vessel from JBU Loggers Pte. Ltd. to Nikka Finance Inc. (CONFIDENTIAL NIKKA01228).

Finally, as confirmed in the Declarations of Evangelos Bairactaris and Paul Coronis, (Exs. B and D respectively), and the letter from HSH Nordbank, (Ex. C), Nikka conducted an exhaustive search for responsive documents in 2015, in connection with the related New York action, and again in 2018, in connection with the proceeding pending before this Court. The reality is,

documents responsive to the remaining items noted in footnote 5 of the Court's September 7, 2018 Order, as well as documents responsive to some of Plaintiff's Requests for Documents, simply no longer exist because they are related to a transaction that concluded nearly ten years ago.

In sum, Nikka has produced all responsive documents in its possession, custody and control, and has provided Declarations explaining the steps taken to uncover responsive and relevant documents/information, the fruits of those efforts, and why certain responsive information is unavailable. Accordingly, Nikka has fully complied with its obligations under Fed. R. Civ. P. 34, this Court's September 7, 2018 and October 5, 2018 Orders, as well as applicable case law. Thus, for the reasons stated herein, Plaintiff's Motion must be denied in its entirety.

<u>**CONCLUSION**</u>

For the foregoing reasons, Plaintiff's motion should be denied and Nikka should be granted such other and further relief as may be deemed just and appropriate.

Respectfully submitted, this the 15th day of October, 2018.

**BURR & FORMAN LLP**

By: *s/John P. Kavanagh, Jr.*
John P. Kavanagh, Jr. (KAVAJ1011)
Kasee Sparks Heisterhagen (SPARK7253)
11 North Water Street, Suite 22200
Mobile, Alabama 36602
Tel: 251-344-5151
Email: jkavanagh@burr.com
          sparks@burr.com

-and-

**BLANK ROME LLP**

By: */s/ William R. Bennett, III*
William R. Bennett, III*
Lauren B. Wilgus*

22

The Chrysler Building
405 Lexington Avenue
New York, New York 10174
Tel.: (212) 885-5000
Email:  WBennett@BlankRome.com
            LWilgus@BlankRome.com

*Counsel for Defendant*
*Nikka Finance Inc.*

*\*Pro hac vice*

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing document by electronically filing same with the Clerk of Court using the CM/ECF system, which will send notifications of such filing to the following: (or, if the party served does not participate in Notice of Electronic Filing, by U.S. First Class Mail, hand delivery, fax or email), on this the 15th day of October, 2018.

Thomas S. Rue
J. Ben Segarra
Maynard Cooper & Gale PC
RSA Battle House Tower Suite 27000
11 North Water Street
Mobile, AL 36602-5027
Email: true@maynardcooper.com
           bsegarra@maynardcooper.com

Thomas Leonard Tisdale
Tisdale Law Offices, LLC
60 East 42nd Street
Suite 1638
New York, NY 10165
212-354-0025
Fax: 212-869-0067
Email: ttisdale@tisdale-law.com

*s/John P. Kavanagh, Jr.*
OF COUNSEL