# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | | |
|---|---|---|
| d'AMICO DRY d.a.c., f/k/a d'Amico Dry Limited, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| vs. | : | CA 18-0284-KD-MU |
| | : | **IN ADMIRALTY** |
| NIKKA FINANCE, INC., as owner of the M/V SEA GLASS II, | : | |
| | : | |
| Defendant. | | |

## ORDER

This cause is before the undersigned on Defendant's motion for protective order (Doc. 123) and Plaintiff's response (Doc. 134).[1] This order **DENYING** Defendant's motion for protective order is entered pursuant to 28 U.S.C. § 636(b)(1)(A) and General Local Rule 72(a)(2)(S).[2]

## FACTUAL BACKGROUND

This admiralty action has been pending in this Court since June 22, 2018, based upon d'Amico's verified complaint against Defendant Nikka and the within Rule B

---

[1] Nikka was extended the opportunity to file a reply by October 16, 2018 (Doc. 130) but did not do so (*compare id. with* Docket Sheet).

[2] Although the undersigned is denying the motion for protective order and allowing Paul Coronis' deposition to be videotaped in London, England on October 24, 2018, in recognition of the privacy interests Mr. Coronis has identified the undersigned is specifically **ORDERING** that the video recording component of Mr. Coronis' deposition can only be used in these civil proceedings in this Court and is **NOT** to be publically disclosed or used in any other investigation or litigation.

attachment of the M/V SEA GLASS II (*compare* Doc. 1 *with* Doc. 76), the vessel being arrested in the jurisdiction of this Court that same day (*see* Doc. 10). This Court has recognized that "[t]he crux of the dispute between d'Amico and Defendant Nikka . . . is whether d'Amico can collect against Nikka, under an alter ego theory, on the $1,766,278.54 foreign judgment entered in favor of d'Amico and against Primera [Maritime (Hellas) Limited]." (Doc. 40, at 1-2 (footnotes omitted)).[3]

The Court entered its Expedited Rule 16(b) Scheduling Order on July 6, 2018 (Doc. 46) and since that time the undersigned has been presented with and attempted to resolve numerous discovery disputes between d'Amico and Nikka through informal discovery conferences (*compare id.* at 5-6 (informing the parties that before the filing of any formal written motions, the undersigned should be utilized as a resource to facilitate the resolution of discovery disputes) *with, e.g.,* Docs. 89, 93, 107, 112-13, 116, 124 & 128 (orders referencing the Court's informal conferencing requirement, etc.)). Indeed, as relates to the instant motion for protective order, whereby Nikka seeks to protect

---

[3] As a bit of additional background, d'Amico previously sued Primera for breach of a September 2, 2008 Forward Freight Agreement ("FFA") and, on June 9, 2009, Plaintiff obtained a final judgment issued by England's High Court of Justice in the amount of $1,766,278.54. (*Compare id. with* Doc. 1, at 1 & Doc. 76, at 1.) Thereafter, on September 11, 2009, d'Amico sued Primera in the Southern District of New York to enforce the foreign judgment (*see, e.g.,* Doc. 76, at 2), an action which remains pending today after numerous proceedings, including two appeals. (*See id.*)

> The within Rule B attachment is intended to provide indisputable personal jurisdiction over the defendant and security for d'Amico Dry's maritime claim pending in New York. If the New York Court determines that no personal jurisdiction exists over the defendant, then the plaintiff respectfully prays that this Court hear and determine that Nikka is the alter ego of Primera and thereby liable to d'Amico for its judgment against Primera which today has a value of $3,758.580.22, plus any further interest and counsel fees that accrue.

(*Id.* at 3.)

Paul Coronis—its 30(b)(6) representative and records custodian—from a videotaped deposition (*see* Doc. 123), this motion is the culmination of several discovery impasses in this case related to this deposition (*compare id. with* Docs. 107 & 112-13). In the context of considering and granting Plaintiff's motion to amend scheduling order (Doc. 98), the undersigned parenthetically "made clear that Nikka would be required to tender a representative for its 30(b)(6) deposition[.]" (Doc. 107, at 2 n.1; *see also id.* (noting that "Nikka's counsel communicated with Paul Coronis during a break in the hearing regarding his availability for deposition . . . prior to the new close of discovery on October 5, 2018.")).[4] And, later, when the parties began sparring over the date on which Paul Coronis' deposition was to be taken and the length of the deposition (*see* Doc. 112), the undersigned urged the parties to reach agreement on the date of the deposition but, barring agreement, ordered that it occur prior to the close of discovery on October 5, 2018 in Piraeus, Greece, and be limited "to a maximum of **9 hours** in a single day, excluding time attributable to objections and breaks." (Doc. 113.) The parties did ultimately agree to take Mr. Coronis' deposition outside the discovery deadline, on October 24, 2018, in London, England, which leads to the present dispute (*see* Doc. 123).

On October 4, 2018, Nikka filed its present motion, seeking a Rule 26(c) protective order prohibiting d'Amico from videotaping Mr. Coronis' deposition on three bases: (1) d'Amico failed to notify Mr. Coronis properly that this deposition would be videotaped; (2) the only purpose of a videotaped deposition is to harass, embarrass,

---

[4] The parties ultimately agreed that Paul Coronis would be Nikka's corporate representative and its records deponent. (Doc. 112, at 1).

3

and intimidate Mr. Coronis; and (3) Mr. Coronis does not consent to, nor will he sign a release allowing, the videotaping of his deposition, as violative of his rights to privacy under the Data Protection Act and EU Data Protection Regulations 2018 and the European Convention on Human Rights and the Human Rights Act. (*See* Doc. 123). Therein, Nikka has set forth the contents of the 30(b)(6) deposition notice it received sometime in August of 2018 (*id.* at 4)[5] and argues that this notice violates the requirements of Fed.R.Civ.P. 30(b)(3)(A) (*see id.* at 3-4). In addition, it is Nikka's position that because Mr. Coronis gave a two-day deposition in the New York action—a deposition that was not videotaped—and, later, extensive testimony during a four-day bench trial, testimony deemed credible (over that of d'Amico's witness Luciano Bonaso), "[t]he only apparent reason for d'Amico's insistence on videotaping Mr. Coronis's deposition is to intimidate and harass him because d'Amico is upset that a Federal Judge found Mr. Coronis to be credible and d'Amico's own witness was found to be dishonest and not credible." (*Id.* at 6; *see also id.* ("d'Amico's hostile attitude toward Mr. Coronis is clearly the only reason d'Amico is insisting on videotaping his deposition because d'Amico knows it will cause Mr. Coronis 'annoyance, embarrassment, [and] oppression.' Indeed, Mr. Coronis has communicated to d'Amico that he does not consent to having his testimony videotaped because, as a citizen of the European

---

[5] "PLEASE TAKE NOTICE that, pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, the Plaintiff, d'Amico Dry D.A.C., by and through its attorneys Maynard, Cooper & Gale, P.C. and Tisdale Law Offices, LLC, will take the deposition of Nikka Finance, Inc. by the witness or witnesses most knowledgeable about the facts alleged in the pleadings in this action upon oral examination before a Notary Public or some other officer or person authorized by law to take depositions at the offices of Ince & Co. Greece, 47-49 Akti Miaouli, Piraeus, Greece on the 5th day of September, 2018 at 10:00 a.m. and you are required to produce the said party then and there for the purpose of said deposition." (*Id.* (emphasis deleted)).

Union, who is not accustomed to being deposed, let alone having his testimony videotaped, feels taping his deposition will cause him extreme embarrassment and intimidation and will have a negative effect on his testimony.")). Finally, Nikka has expounded on its privacy argument as follows:

> Mr. Coronis is a citizen of the European Union. Under the Data Protection Act and EU General Data Protection Regulations 2018, which is in force in the United Kingdom where the deposition will occur, and under the European Convention on Human Rights and the Human Rights Act (collectively, the "Acts"), every European Union citizen has a right to privacy. Under these Acts, captured video footage counts as personal data if the subject can be identified. Here, Mr. Coronis will be identified in the videotaped deposition and, thus, under the Acts, d'Amico is required to obtain Mr. Coronis's consent and signed release before d'Amico records, uses or stores video of him, otherwise d'Amico will be in breach of the law. Mr. Coronis has serious privacy concerns about the videotaping of his deposition as he thinks the only purpose of the video is to annoy, embarrass, and oppress him and violate his privacy interests. Thus, he does not consent to his deposition being videotaped.

(*Id.* at 6-7.)

d'Amico filed its response in opposition on October 12, 2018, and while the undersigned has no need to reference that response at length here, it need be noted that the day after Nikka filed the present motion, that is, on October 5, 2018, Plaintiff did issue a Supplemental Notice of Deposition by Videotape (and transcription) of Nikka Finance, Inc. (*see* Doc. 134, Exhibit 1).

## **CONCLUSIONS OF LAW**

Rule 26(c) provides that "[a] party or any person from whom discovery is sought may move for a protective order in the court where the action is pending" and, further, "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense[.]" *Id.* Indeed, "[w]hen warranted, a party may object to the nonstenographic recording of a deposition

5

under Rule 26(c)." *Burr v. Phillip Morris USA,* 2011 WL 13143904, *2 (M.D. Fla. Oct. 19, 2011), citing Fed.R.Civ.P. 30 advisory committee's notes to the 1993 amendments. With these very general principles in mind, the undersigned considers, in turn, Nikka's arguments in favor of issuance of a protective order prohibiting d'Amico from videotaping Mr. Coronis' deposition.

      A.    **Rule 30(b)(3) and its Application to this Case**.  Rule 30(b)(3)(A) of the Federal Rules of Civil Procedure provides that "[t]he party who notices the deposition must state in the notice the method [that is, audio, audiovisual, or stenographic means] for recording the testimony." *Id.*; *see also Burr, supra,* at *2 ("A deposition may be recorded by audio, audiovisual, or stenographic means, and the method for recording must be stated in the deposition notice."). However, Rule 30(b)(3)(B) goes on to provide that "[w]ith prior notice to the deponent and other parties, **any party** may designate another method for recording the testimony in addition to that specified in the original notice." *Id.* (emphasis supplied).

      Here, the original deposition notice issued by d'Amico can only be read as providing for the recording of Paul Coronis' deposition by stenographic means. (*See* Doc. 123, at 4). d'Amico has since designated an additional method for recording Coronis' testimony, that is, by videotape (*see* Doc. 134, Exhibit 1), in accordance with Rule 30(b)(3)(B). *See Garcia v. Mako Surgical Corp.,* 2014 WL 4206681, *2 (S.D. Fla. Aug. 25, 2014) (recognizing that party who issues the original deposition notice can later designate another method for recording the deponent's testimony). The undersigned agrees with Plaintiff's observation that "[t]he very fact that Nikka filed its Motion for Protective Order well in advance of the deposition itself confirms that Nikka

6

received ample notice of the intent to videotape the deposition." (Doc. 134, at 8). Accordingly, the undersigned **DECLINES** to issue a protective order prohibiting the videotaping of Mr. Coronis' deposition on this basis.

**B.** **Protective Order to Avoid Embarrassment, Harassment, Oppression and/or a Violation of Privacy Interests**. Though the scope of discovery is broad, *see* Fed.R.Civ.P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]")), Rule 26(c) authorizes that "for good cause[,]" this Court may "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense[.]" *Id.* "'The party requesting a protective order must make a specific demonstration of facts in support of the request as opposed to conclusory or speculative statements about the need for a protective order and the harm which will be suffered without one.'" *Greater Birmingham Ministries v. Merrill,* 321 F.R.D. 406, 407 (N.D. Ala. 2017), quoting *Dunford v. Rolly Marine Serv. Co.,* 233 F.R.D. 635, 636 (S.D. Fla. 2005) (other citation omitted); *see also Celentano v. Nocco,* 2016 WL 4943939, *2 (M.D. Fla. Sept. 16, 2016) (same); *Trinos v. Quality Staffing Servs. Corp.,* 250 F.R.D. 696, 698 (S.D. Fla. July 7, 2008) (recognizing that "the party seeking the protective order must show good cause by demonstrating a particular need for protection[;]" that "[b]road allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test[;]" and that "the alleged harm must be significant, not a mere trifle."). Additionally, "'[a] court must balance the competing factors involved in determining whether good cause has been shown.'" *Greater Birmingham Ministries, supra,* at 407, quoting *Dunford, supra; see also Celentano, supra,* at *2 ("In deciding

whether a movant has established 'good cause' to warrant the granting of a protective order, courts must balance the [non-movant's] interest in obtaining discovery against the movant's stated harm that would result from allowing the [videotaped] deposition.").

Here, Nikka merely speculates that d'Amico's insistence on videotaping Mr. Coronis' deposition is to intimidate and harass him and cause him annoyance, embarrassment, and oppression (Doc. 123, at 6) but nowhere establishes the actual harm that the deponent will suffer/endure by having his deposition videotaped. By Nikka's own account, Mr. Coronis successfully navigated direct and cross-examination during the course of a four-day bench trial in New York and was found credible by the trial judge in that case, leaving the undersigned singularly unarmed to find that Mr. Coronis will suffer any harm by having his deposition videotaped in this case. Mr. Coronis' "feelings" that the taping of his "deposition will cause him extreme embarrassment and intimidation and will have a negative effect on his testimony[]" are insufficient to establish a particularized harm, especially given his purported successful track record in the New York action.[6] Besides, this is a different action in which Nikka has supplied additional written discovery (that is, written discovery in addition to that supplied in the New York action) and, therefore, this Court simply cannot downplay d'Amico's interest in videotaping Mr. Coronis' deposition to preserve his testimony should he opt to stay in Greece rather than appear for trial in Mobile on November 26, 2018, *cf. Farnsworth v. Procter & Gamble Co.,* 758 F.2d 1545, 1547 (11th Cir. 1985) (recognizing that trial preparation is an important interest "and great care must be taken

---

[6] Nikka certainly has offered nothing which would suggest that Mr. Coronis has a medical condition that could be aggravated by having his deposition videotaped.

to avoid [its] unnecessary infringement."); *compare id. with Degenhart v. Arthur State Bank,* 2011 WL 4351491, *3 (S.D. Ga. Sept. 15, 2011) ("Litigation is expensive enough, and cost-saving videotaping is *encouraged*.").

As for Mr. Coronis' noted privacy concerns and stated unwillingness to consent and sign a release before d'Amico records video of him, the undersigned observes that the language utilized by Nikka in citing to the foreign Acts (Doc. 123, at 6-7) leads to the conclusion that those Acts are directed to the use of videotaped images of persons unaware (at least, initially) of being videotaped. Here, of course, Mr. Coronis is well aware his deposition is to be videotaped and, therefore, having in hand no authority to the contrary supplied by Nikka, the undersigned **DECLINES** to find that the Acts to which Nikka cites are applicable to Mr. Coronis' duly-noticed videotaped deposition, which is to be utilized in civil litigation in the United States. At the same time, however, in order to ensure that Mr. Coronis' videotaped deposition will be utilized only in connection with this litigation—and to ease his privacy concerns—the undersigned **ORDERS** that the video recording component (as opposed to the transcript) of Mr. Coronis' deposition on October 24, 2018 is **NOT** to be publically disclosed **or** utilized in any other investigation or litigation.

The undersigned concludes that Nikka has not established good cause for entry of a protective order prohibiting the videotaping of Mr. Coronis's deposition.[7]

---

[7] Other than limiting the use of Mr. Coronis' videotaped component of the deposition to this matter/litigation alone.

## **CONCLUSION**

The Defendant's motion for protective order (Doc. 123) is **DENIED** and d'Amico is specifically authorized to videotape Paul Coronis' deposition in London, England on October 24, 2018.

**DONE** and **ORDERED** this the 19th day of October, 2018.

                s/P. BRADLEY MURRAY
                **UNITED STATES MAGISTRATE JUDGE**