IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| d'AMICO DRY d.a.c.<br>f/k/a d'Amico Dry Limited | : | |
| Plaintiff, | : | |
| v. | : | Civil Action No. CV-18-284 |
| NIKKA FINANCE, INC.,<br>as Owner of the<br>M/V SEA GLASS II, | : | |
| | : | |
| Defendant. | : | |

**PLAINTIFF'S SUPPLEMENTAL MEMORANDUM OF LAW IN FURTHER OPPOSITION TO NIKKA'S MOTIONS FOR SUMMARY JUDGMENT**

Plaintiff, d'Amico Dry d.a.c., f/k/a d'Amico Dry Limited ("d'Amico" or "Plaintiff") submits the following as its Supplemental Memorandum of Law in further opposition to the Motion for Summary Judgment filed on behalf of Nikka Finance, Inc. ("Nikka" or "Defendant").

This Court's docket is riddled with a multitude of motions by Nikka to vacate the attachment, stay or dismiss these proceedings, etc. Like those other motions, the subject motion is without merit. Nikka's day of reckoning has arrived.

**PRELIMINARY STATEMENT**

d'Amico's attachment of the SEAGLASS II pursuant to Supplemental Admiralty Rule B was a successful effort to obtain security to enforce the English judgment rendered against Primera Maritime (Hellas), Inc. ("Primera") which, since 2009, has been the subject of an action to recognize the foreign judgment in the United States District Court for the Southern District of New York ("New York Action"). In addition to seeking security for its judgment against Nikka as Primera's alter ego, d'Amico asked this Court to declare Nikka the alter ego of Primera in the

{04677966.1}

event the New York Court dismissed the Complaint against Nikka for lack of personal jurisdiction. (Doc. 76). This Court, exercising its "unquestionable authority to control its own docket," *Smith v. Psychiatric Sols. Inc.*, 750 F.3d 1253, 1262 (11th Cir. 2014), ordered that the parties proceed with discovery and try the alter ego dispute on November 26, 2018 (Doc. 46) (later moved to November 27, 2018). So as to avoid the possibility that the New York and Alabama Courts issued decisions concerning the identical issues with the identical parties at or about the same time, thereby wasting judicial resources and/or engendering the possibility of arriving at different conclusions and/or results, d'Amico withdrew its defense to Nikka's motion to dismiss for lack of personal jurisdiction in New York, and the New York Court dismissed the New York Action against Nikka only, without prejudice. (S.D.N.Y 09-CV-07840.)

At the time this action was filed and the SEAGLASS II was attached, Nikka was a party to the New York Action and the English judgment still had not been recognized under New York's version of the Uniform Foreign Money Judgment Recognition Act ("UFMJRA"). Still today, that judgment has not been recognized and d'Amico's request for that relief is still pending. Reading Nikka's Memorandum, one might leave with the impression that UFMJRA relief was never requested in New York or was abandoned. Neither is true.

In this action, d'Amico does <u>not</u> seek to recognize the English judgment. The UFMJRA is not referred to in d'Amico's Complaint or Amended Complaint, nor does the word "recognize" appear in either. Nikka attempts to recast d'Amico's pleadings into something they are not. Since d'Amico is <u>not</u> asking this Court to recognize the English judgment, no permission from the English court is required. Nikka's argument that d'Amico's action here does not give rise to a valid maritime claim has been previously addressed and rejected by the Fourth Circuit Court of Appeals (in an action prosecuted by Nikka's counsel here). Nikka ignores the long-standing Supreme Court

precedence that admiralty jurisdiction extends to any claim to enforce a foreign admiralty judgment, *Penhallow v. Doane Adm'rs,* 3 U.S. (3 Dall.) 54, 97, 1 L. Ed. 507 (1795) (opinion of Iredell, J.), and that admiralty courts have subject matter jurisdiction to determine the question of alter ego. *Swift & Co. Packers v. Compania Colombiana Del Caribe, S.A.,* 339 U.S. 684, 689 (1950).

## ARGUMENT

A.  **There is no Statutory Bar to d'Amico's Action in Alabama**

As noted earlier, d'Amico does not seek recognition of the English judgment in this action. d'Amico seeks only to enforce it, via New York, against the SEAGLASS II, the property of Primera's alter ego, Nikka. All of the requirements of Supplemental Rule B were met and Nikka's Motion to Vacate the Attachment was denied. d'Amico refers this Court to d'Amico's arguments concerning these issues in d'Amico's earlier Memoranda (Docs. 77, 78 and 153) as well as in the Supplemental Declaration of William Marshall. (Doc. 77-1.)

With no legal support, Nikka surgically dissects d'Amico's pleadings in an effort to make this an action to confirm the foreign judgment. In so doing, Nikka ignores the notice pleadings standard of Fed. R. Civ. P. Rule 8(a) and the "liberal" manner by which pleadings should be construed. *Roe v. Aware Women Ctr. For Choice, Inc.,* 253 F.3d 678, 683 (11th Cir. 2001). Nikka should not be heard to complain about some perceived mis-interpretation of d'Amico's Complaint. Nikka has known since it filed its Motion to Stay the function and purpose of d'Amico's Mobile Action. (See Doc. 72 at pp. 2-5). This purpose was expressly stated in d'Amico's Complaint. (*See* Doc. 1 at p. 3; Doc. 76 at p. 3.)

Not only is this Nikka's third attempt at rearguing the same motion before this Court, but Nikka flew this argument up the flag pole in London by way of an application on short notice on

July 19, 2018, which was adjourned and never refiled. Keeping with its "judgment shirker" reputation, Nikka still has not paid d'Amico's costs summarily assessed by the Court at £4,451 and due to be paid on August 3, 2018. (Exhibit A).

However, as the Supplemental Declaration of William Marshall (ECF 77-1) establishes:

1. d'Amico's action in Mobile is not an action to enforce a judgment within the meaning of the English Limitation Act of 1980. The Act does not apply to the enforcement of English judgments. (ECF 77-1, ¶¶ 8-11);

2. No separate request for permission to proceed with the Mobile action against Nikka is required. The New York proceedings against Primera seeks that relief and it was filed well within the six-year time period. (ECF 77-1, ¶ 7); and

3. The subject action is not against the judgment debtor directly, but instead is against its alter ego, a concept which is not recognized in English law. (ECF 77-1, ¶14).

Nikka's so-called authorities, *Soc'y of Lloyds v. Shell*, No. C-1-04-188, 2005 U.S. Dist. Lexis 22104 (S.D. Ohio, Sept. 30, 2005) and *Overseas Development Bank in Liquidation v. Nothmann*, 103 A.D. 2d 534 (2d Dept. 1984), order rev'd, 64 N.Y. 2d 927 (1985) are cases involving the recognition of a foreign money judgment under those states' versions of the UFMJRA as well as enforcement of those state's judgments using that state's procedures. This case does not involve a request for recognition of the foreign judgment, and thus, Nikka's authorities are entirely inapposite.

**B.   Nikka's invitation to dismiss the case for lack of subject matter jurisdiction would eviscerate the twin aims of Supplemental Admiralty Rule B and offends well-established tenets of admiralty law**

"[T]here are two reasons for the procedure authorized in Supplemental Rule B: to assure a respondent's appearance, and to assure satisfaction in case the suit is successful." *SCL Basilisk AG v. Agribusiness United Savannah Logistics LLC*, 875 F.3d 609, 615, 2017 A.M.C. 2926, 27 Fla. L. Weekly Fed. C 373, 2017 WL 5382747 (11th Cir. 2017)(citing *Nehring v. Steamship M/V*

{04677966.1}                                                        4

*Point Vail*, 901 F.2d 1044, 1051 (11th Cir. 1990) (alteration in original) (quoting *Polar Shipping Ltd. v. Oriental Shipping Corp.*, 680 F.2d 627, 637 (9th Cir. 1982))); see also *Swift & Co. Packers v. Compania Colombiana Del Caribe, S.A.*, 339 U.S. 684, 693 (1950); *Aurora Mar. Co. v. Abdullah Mohamed Fahem & Co.*, 85 F.3d 44, 48 (2d Cir. 1996).

In this case, at the time of the filing of the Complaint and as of the date of this memorandum, no judgment has been recognized in the United States of America against Primera although that relief has been requested and is pending in the New York Action. Nikka's characterization of this proceeding as a "*post-judgment* enforcement action" is incorrect. In accordance with Supplemental Rule B and scores of prior cases, Plaintiff sought and obtained security for its soon-to-be recognized English judgment against Primera and asked this Court to declare Nikka as Primera's alter ego.[1] What Plaintiff's Complaint seeks is simple: security for its potential New York judgment confirming the English judgment against Primera (which has already been obtained), and a declaration that Nikka is Primera's alter ego and thereby liable for the New York judgment whenever it is issued.

The Supreme Court has recognized that "[t]he jurisdiction of a court of admiralty to determine the question of alter ego is undoubted." *Swift & Co. Packers v. Compania Colombiana Del Caribe, S.A.*, 339 U.S. 684, 689 (1950). Under long-standing Supreme Court jurisprudence, a district court's admiralty jurisdiction extends to claims to enforce foreign admiralty judgments. *See Penhallow v. Doane Adm'rs*, 3 U.S. (3 Dall.) 54, 97, 1 L. Ed. 507 (1795) (opinion of Iredell, J.); *see also Vitol S.A. v. Primerose Shipping Co., Ltd.*, 708 F.3d 527, 540 (4th Cir. 2013) (stating "centuries of settled hornbook admiralty law establish that 'admiralty jurisdiction in the United

---

[1] Certainly, Nikka cannot dispute that admiralty subject matter jurisdiction provided by § 1333 extends to suits to enforce foreign judgments based on claims of maritime character. *D'Amico Dry Ltd. v. Primera Mar. (Hellas) Ltd.*, 756 F.3d 151, 156 (2d Cir. 2014).

States may be broadly stated as extending to … any claim to enforce a judgment of a foreign admiralty court'"); *Ost-West-Handel Bruno Bischoff GmbH v. Project Asia Line, Inc.,* 160 F.3d 170, 174 (4th Cir. 1998); 1-VII *Benedict on Admiralty* § 106. See also *Flame S.A. v. Freight Bulk Pte. Ltd.,* 807 F.3d 572, 582 (4th Cir. 2015).

This recognition of subject matter jurisdiction in the admiralty context "differs substantially from the law governing jurisdiction to enforce judgments rendered by federal courts exercising federal question jurisdiction under 28 U.S.C. § 1331." *d'Amico Dry Ltd. v. Primera Mar. (Hellas) Ltd.,* 756 F.3d 151, 155 (2d Cir. 2014). While an enforcement action brought under § 1331 must demonstrate the existence of federal jurisdiction independent of the judgment to be enforced, a district court's ability to enforce foreign admiralty judgments has not been so limited. *Id.* at 155-56 (collecting cases on point). Similarly, as the Fourth Circuit held in *Vitol,* the district court's admiralty jurisdiction includes the inherent authority to grant attachments, including an attachment of assets pursuant to Supplemental Rule B. *See* 708 F.3d at 537-38. *Flame,* 807 F.3d at 582.

In 2015, the Fourth Circuit rejected the same argument Nikka now advances under facts less compelling than here. Even though the Plaintiff already had a New York judgment recognizing the foreign judgment when it attached the alleged alter ego's vessel, in *Flame S.A. v. Freight Bulk Pte. Ltd.,* the Fourth Circuit rejected the argument and held that the district court had admiralty subject matter jurisdiction to enforce a foreign judgment against a party not named in the already confirmed judgment, on an alter ego basis. 807 F.3d 572 (4th Cir. 2015). In rejecting these arguments, the Fourth Circuit stated, "Freight Bulk fails to grasp key substantive distinctions between federal question jurisdiction and admiralty jurisdiction when bringing suit to enforce a judgment." *Id.* at 581. Citing the Supreme Court's decision in *Swift,* the Fourth Circuit concluded

that "undoubted" authority existed for the district court to exercise admiralty jurisdiction over the alter ego and fraudulent conveyance claims associated with the recognition of the foreign judgment. *Id.* at 582. The court went on to observe that the enforcement claims were "obviously within admiralty jurisdiction" and that "[a]ttendant to these claims was the Supplemental Rule B attachment." *Id.* at 583. This is precisely what d'Amico has done in the instant case.

The plaintiff in *Flame S.A.* obtained recognition of the English judgment in the Southern District of New York and later registered that judgment in the Eastern District of Virginia. *Id.* at 577. In this case, once recognition of the English judgment occurs in the Southern District of New York[2], Plaintiff will then register that judgment in this Honorable Court and seek enforcement of said judgment against Nikka as was precisely the case in *Flame S.A.* Nikka's characterization of d'Amico's soon-to-be judgment as a "New York judgment" (Doc. 171, p. 8) is incorrect, but it is also a distinction without a different since the Flame S.A. judgment was recognized in New York <u>before</u> being registered in Virginia and before the vessel was attached pursuant to Rule B. Nikka's endless, meritless attacks on both the Southern District of New York's and the Southern District of Alabama's subject matter jurisdiction are indicative of its never-ending effort to evade its legal obligations.

The *Dunsink* case cited on page 9 of Nikka's latest memorandum of law in support of summary judgment lends no support to its position. That case did not involve recognition of a judgment, but rather a foreign arbitral award, which was fully confirmed in a separately filed, prior action. Unlike here, in *Dunsink*, the Rule B attachment was unquestionably post-judgment. There, the Court noted that "Rule B is not a post-judgment remedy," citing *Stolt-Nielsen Transp. Grp., BV v. Lio Yag Sanayi Ve Ticaret A.S.*, 330 F. App'x 207, 208 (2d Cir. 2009); *Dunsink*, p. 6, fn 3.

---

[2] The judgment debtor, Primera, did not raise lack of personal jurisdiction as an affirmative defense and, thus no impediment exists to the recognition of the English judgment in New York.

{04677966.1}                                                7

Additionally, unlike the recognition of a foreign judgment, the Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("Convention") provides for a "strictly limited" role for the district court. *Dunsink*, p. 5, fn 2. In support of that proposition, the *Dunsink* court cited *Orion Shipping & Trading Co. v. Eastern States Petroleum Corp. of Panama S.A.*, 312 F.2d 299, 301 (2d Cir. 1963) which was later clarified in *CBF Industria de Gusa S/A v. AMCI Holdings, Inc.*, 850 F.3d 58, 74 (2d Cir.), *cert. denied*, 138 S. Ct. 557 (2017). It is likely that footnote 2 of *Dunsink* does not survive the Second Circuit's decision in *CBF* and is not sound law. In any event, *Dunsink* does not apply and certainly does not support Nikka's position.

Finally, Nikka cites to *Stolt-Nielsen, supra*, a Summary Order from the Second Circuit which affirmed the district court's denial of an ex parte order of maritime attachment in a proceeding which also sought confirmation of a foreign arbitral award. Like *Dunsink*, Stolt-Nielsen does not apply since it concerned confirmation of an arbitral award with its attendant limited role. Further, the district court and Second Circuit were also concerned that the plaintiff had offered the court no indication that there were or would be any assets of the defendant-award debtor within the district, as required by Rule B, and that it "asks us to transform Rule B into a judgment collection spider's web, ready to ensnare any of respondents' assets that happen to pass by, whether today, next month, or next year. This was not the relief ... contemplated by Rule B." *Id.* Here, Plaintiff has already attached property against which to enforce its judgment and the concern about a collection spider's web does not exist.

The Eleventh Circuit's decision in *Nat'l Mar. Serv. Inc. v. Straub*, 776 F.3d 783 (11th Cir. 2015), (which Nikka does not raise) is unsupportive of Nikka's position. *Straub* concerned a post-judgment supplementary proceeding wherein the Court found that ancillary jurisdiction existed to undue Defendant's fraudulent transfer of its assets pursuant to state law. *Id.*, at 787. In *dicta*, the

Court questioned whether the same would be true for a new post-judgment lawsuit to impose liability on a third party. *Id.* As Nikka no doubt recognizes, *Straub* is a post-judgment newly filed supplementary proceeding under state law whereas this is a pre-judgment Supplemental Rule B attachment with indisputable admiralty subject matter jurisdiction. As the *Flame* court noted, the parties in *Straub* failed to consider the district court's independent admiralty jurisdiction and the fact that *Straub* did not "challenge that the district Court's admiralty jurisdiction extends to enforcing foreign admiralty judgments in attachment proceedings." *Flame*, 807 F.3d at 583.

This Court has subject matter jurisdiction to declare Nikka the alter ego of Primera so that d'Amico's admiralty judgment in England (which is soon to be recognized in the New York Action) can be enforced. "The jurisdiction of a court in admiralty to determine the question of alter ego is undoubted." *Swift*, 339 U.S. at 689, n. 4. That "undoubted [Swift] authority exists in this case as well." *Flame*, 807 F.3d at 582. Nikka's requested relief would effectively eviscerate Supplemental Admiralty Rule B and insult some of the basic tenet of "federal admiralty jurisdiction [which] is as old as the federal courts themselves." *d'Amico Dry*, 756 F.3d at 155.

## CONCLUSION

The Court has already determined that it has the requisite subject matter jurisdiction to hear the instant dispute. Contrary to what Nikka has stated, this action is only brought to seek security for Plaintiff's judgment against Nikka as Primera's alter ego, which depends on a ruling from this Court to declare Nikka one of the alter egos of Primera. Even were it otherwise, and the instant action were to be considered something in the nature of an enforcement action, it is axiomatic that admiralty jurisdiction extends to *all claims to enforce any foreign admiralty judgments*, and that maritime courts have subject matter jurisdiction to determine alter ego allegations. Nikka's motion is due to be denied.

|  |  |
|---|---|
|  | /s/ Thomas S. Rue |
|  | Thomas S. Rue (RUETH8241) |
|  | J. Ben Segarra (SEGAJ6478) |
|  | Attorneys for Plaintiff, d'Amico Dry d.a.c., |
|  | f/k/a d'Amico Dry Limited |
|  | 11 North Water Street, Suite 24290 |
|  | Mobile, Alabama 36602 |
|  | Telephone:   (251) 432-0001 |
|  | Facsimile:    (251) 432-0007 |
|  | E-mail: true@maynardcooper.com |
|  |              bsegarra@maynardcooper.com |

OF COUNSEL:
MAYNARD, COOPER & GALE, P.C.

 

|  |  |
|---|---|
|  | /s/ Thomas L. Tisdale |
|  | Thomas L. Tisdale (Pro Hac Vice) |
|  | Attorney for Plaintiff, d/Amico Dry d.a.c., |
|  | f/k/a d'Amico Dry Limited |
|  | 60 East 42nd Street, Suite 1638 |
|  | New York, New York 10165 |
|  | Telephone:   (212) 354-0025 |
|  | Facsimile:    (212) 869-0067 |
|  | E-mail:        ttisdale@tisdale-law.com |

OF COUNSEL:
TISDALE LAW OFFICES, LLC

## CERTIFICATE OF SERVICE

I do hereby certify that I have on this 17th day of December, 2018, filed the foregoing pleading with the Clerk of the Court via the CM/ECF Filing System which will automatically forward an electronic copy of same to all counsel of record.

                    /s/ Thomas S. Rue