# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| d'Amico Dry d.a.c., | ) |
| Plaintiff, | ) |
| v. | ) CIVIL ACTION No. 1:18-00284-KD-MU |
| Nikka Finance, Inc., as owner of M/V SEA GLASS II, | ) |
| Defendant. | ) |

## ORDER

This matter is before the Court on Plaintiff d'Amico Dry d.a.c.'s Motion for Attorneys' Fees,[1] (Doc. 203), Defendant Nikka Finance, Inc.'s Response, (Doc. 210), and d'Amico's Reply, (Doc. 215). In March, the Court, following a nonjury trial, found in d'Amico's favor. Specifically, the Court found that Nikka was Primera Maritime Limited's alter ego. (Doc. 192).

At the conclusion of litigation in the United States District Court for the Southern District of New York ("the New York action"), the District Court found in d'Amico's favor. D'Amico Dry D.A.C. v. Primera Mar. (Hellas) Ltd., 348 F. Supp. 3d 365, 368 (S.D.N.Y. 2018), reconsideration denied, No. 09-CV-7840 (JGK), 2019 WL 1294283 (S.D.N.Y. Mar. 20, 2019). When d'Amico moved for attorneys' fees and costs, the District Court granted the motion in all respects save for fees and costs incurred during an action in Texas and the present action ("the Mobile action"). Instead, the District Court "defer[red] to the Southern District of Alabama Court . . . to determine whether the plaintiff's costs in that action are reasonable and recoverable." D'Amico Dry d.a.c. v. Primera Maritime (Hellas) Limited, No. 1:09-cv-07840-JGK (Doc. 376 at 5); 2019 WL 1863789, at *2 (S.D.N.Y. Apr. 24, 2019).

---

[1] D'Amico makes the motion pursuant to Federal Rule of Civil Procedure 54(d).

D'Amico now moves for legal fees related to this action. Nikka opposes the request, arguing d'Amico is not entitled to any fees or costs as a matter of law and that d'Amico's $851,885.02 request is unreasonable.[2] (The total now requested has increased to $872,844.52 to account for the fees incurred in preparing the present motion.) The Court concludes that although d'Amico is entitled to attorneys' fees and costs, the attorneys' fees requested are unreasonably high.

I.     **LEGAL STANDARD**

Courts within the Eleventh Circuit generally apply the lodestar method—multiplying the hours reasonably expended by a reasonable hourly rate—to calculate attorneys' fees. Norman v. Hous. Auth., 836 F.2d 1292, 1299 (11th Cir. 1988). The 12 factors identified in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974), may aid the Court in that regard. Norman, 836 F.2d at 1299. Those factors include:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

Ass'n of Disabled Ams. v. Neptune Designs, Inc., 469 F.3d 1357, 1359 n.1 (11th Cir. 2006) (citing Johnson, 488 F.2d at 717–19). "Courts are not authorized to be generous with the money of others, and it is as much the duty of courts to see that excessive fees and expenses are not awarded as it is to see that an adequate amount is awarded." Am. Civil Liberties Union of Georgia v. Barnes, 168 F.3d 423, 428 (11th Cir. 1999).

    a.  **Reasonable Rate**

---

[2] At various points, d'Amico presented this figure as either $851,885.00 or $851,885.02. Compare Doc. 204 at 3 ($851,885.00) with Doc. 215 at 16 ($851,885.02).

The Eleventh Circuit has instructed that a reasonable hourly rate is "the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." Norman, 836 F.2d at 1299. In this case, the relevant legal community is Mobile, Alabama. Barnes, 168 F.3d at 437 (quoting Cullens v. Georgia Dep't. of Transp., 29 F.3d 1489, 1494 (11th Cir. 1994)) (providing that "the 'relevant market' for purposes of determining the reasonable hourly rate for an attorney's services is 'the place where the case is filed[]'"). As the party requesting fees, d'Amico bears the burden of supplying the Court with specific and detailed evidence from which the Court can determine the reasonable hourly rate for the work performed. Barnes, 168 F.3d at 427 (citing Norman, 836 F.2d at 1303). "Satisfactory evidence at a minimum is more than the affidavit of the attorney performing the work." Norman, 836 F.2d at 1299.[3] The Court, which is familiar with the prevailing rates in the local market, may act as its own expert and rely on its "knowledge and experience" to determine the reasonableness and propriety of the requested rates. Norman, 836 F.2d at 1303. This Court's prior awards are relevant and instructive in determining whether the "requested rate is in line with prevailing market rates" in this district for attorneys of reasonably comparable skill, experience, and reputation to the attorney seeking an award of fees. Langford v. Hale Cty. Ala. Comm'n, 2016 WL 4976859, *3 (S.D. Ala. Sept. 16, 2016).

    b.  **Hours Reasonably Expended**

In determining the reasonableness of the number of hours expended, the Court should not include any hours that are "excessive, redundant, or otherwise unnecessary." Norman, 836 F.2d at 1301 (quoting Hensley v. Eckerhart, 461 U.S. 424, 434 (1983)). The Court will not permit a party

---

[3] The Court observes that with respect to the reasonableness of the rates charged by both Tisdale and Rue, each attested to the reasonableness of his own rate.

3

to recover fees for hours "that would be unreasonable to bill to a client and therefore to one's adversary irrespective of the skill, reputation or experience of counsel." Norman, 836 F.2d at 1301 (emphasis omitted). To determine whether the request is reasonable, courts should consider the Johnson factors. Bivins v. Wrap it Up, Inc., 548 F.3d 1348, 1350 (11th Cir. 2008). And if a court concludes that the number of hours expended is unreasonably high, it may "conduct an hour-by-hour analysis or it may reduce the requested hours with an across-the-board cut." Id. For when—such as here—a voluminous request is made, "an hour-by-hour review is simply impractical and a waste of judicial resources." Loranger v. Stierheim, 10 F.3d 776, 783 (11th Cir. 1994). It is in these instances "where the fee motion and supporting documents are so voluminous, it is sufficient for the court to provide a concise but clear explanation of its reasons for the reduction," id., and the court may reduce the hours sought with an across-the-board reduction. See Padurjan v. Aventura Limousine & Transp. Serv., Inc., 441 F. App'x 684, 687 (11th Cir. 2011) (holding that the district court did not err in "effecting broad percentage-based deductions to the hours expended"); see also Villano v. City of Boynton Beach, 254 F.3d 1302, 1311 (11th Cir. 2001) ("Appellant submitted 569.30 hours for compensation. Those hours are extensive enough that we do not expect the district court or the magistrate judge to conduct an hour-by-hour analysis in this case."); Garrett Investments, LLC v. SE Prop. Holdings, LLC, 956 F. Supp. 2d 1330, 1344 (S.D. Ala. 2013) (reducing request for attorneys' fees by 10%); SE Property Holdings, LLC v. Green, 2013 WL 790902, *6 (S.D. Ala. Mar. 1, 2013) (15% across-the-board reduction for clerical tasks performed by attorneys or paralegals, excessive billing for intra-office conferences among timekeepers, premature preparation of litigation documents never filed, and billings for monthly status reports); Norman v. Alorica, Inc., 2012 WL 5452196, at *7 (S.D. Ala. Nov. 7, 2012) (imposing a 50%

4

across-the-board cut); United States v. Adkinson, 256 F. Supp. 2d 1297, 1316 (S.D. Fla. 2003) (reducing hours by 20% due to their excessive nature).

## II. ANALYSIS

### a. Nikka's General Arguments Against Attorneys' Fees and Costs

Nikka argues d'Amico is not entitled to recover any of the attorneys' fees and costs it incurred during the pendency of the Mobile action. Three arguments underlie this broad contention. The arguments include: (1) attorneys' fees for the Mobile action are not part of the New York judgment and cannot be awarded in an action for security to enforce the New York judgment; (2) the English judgment is time-barred and unenforceable; and (3) neither the English judgment nor the ISDA Master Agreement provides for legal fees. The Court has already addressed the second sub-argument and will not revisit it.

As for the third argument, the Court finds, consistent with the Southern District of New York, that the Master Agreement provides for the legal fees. See D'Amico Dry d.a.c. v. Primera Mar. (Hellas) Ltd., No. 09-CV-7840 (JGK), 2019 WL 1863789, at *1 (S.D.N.Y. Apr. 24, 2019) (first internal citation omitted) ("The English Judgment expressly provides that the defendants will indemnify the plaintiff for 'all reasonable out-of-pocket expenses, including legal fees . . . incurred by the [plaintiff] by reason of the enforcement and protection of its rights under this Agreement, including . . . costs of collection.' Section 11 of the ISDA Master Agreement states nothing to the contrary. See [Document filed in the New York Action] (providing for costs incurred, including legal fees, by a party collecting against a defaulting party).").

The Court also does not find merit in Nikka's contention that legal fees cannot be awarded in an action for security for the New York judgment. Although d'Amico seeks "enforcement of the eventual New York judgment which recognized the English judgment," (Doc. 215 at 5), that does not change the fact that d'Amico is nevertheless seeking to "enforce[] and protect[] . . . its

5

rights under [the ISDA Master Agreement] . . . ." Because the ISDA Master Agreement provided for costs incurred by reason of enforcement and protection of the rights under the ISDA Master Agreement, d'Amico may recover attorneys' fees and costs incurred in this action for security. See Misener Marine Const., Inc. v. Norfolk Dredging Co., 594 F.3d 832, 838 (11th Cir. 2010) (quoting Natco Ltd. P'ship v. Moran Towing of Fla., Inc., 267 F.3d 1190, 1193 (11th Cir. 2001)) (stating the third of three exceptions to the general rule that a prevailing party in an admiralty action is not entitled to recover legal fees is when "there is a contract providing for the indemnification of attorneys' fees").

### b. Reasonableness of the Rates Charged and Number of Hours Expended

The Court turns to the reasonableness of the hourly rates requested and the hours expended, starting with the hourly rates.

### i. Reasonable Hourly Rates

D'Amico posits that the rates charged by the lawyers are reasonable as compared to the "prevailing market rates in the relevant community." (Doc. 204 at 7) (quoting Galdames v. N & D Inv. Corp., 432 F. App'x 801, 807 (11th Cir. 2011)).[4] In support of this contention, d'Amico relies upon its attorneys' affidavits. (Doc. 203-1; 203-11). But the Court does not agree and will reduce the rates requested as detailed below.

Thomas L. Tisdale is the Managing Member of Tisdale Law Offices, LLC. (Doc. 203-1 at 2, ¶ 1). He graduated from law school in 1981, and has, for the majority of his career, focused on

---

[4] Importantly, the market is Mobile. D'Amico has not contended that attorneys in this area were unwilling or unable to handle its claim such that the Court should consider awarding rates above those considered reasonable in the Mobile market. See Allen v. McClain EZ Pack of Alabama, Inc., 2005 WL 1926636, at *4 (S.D. Ala. Aug. 8, 2005) (citing Barnes, 168 F.3d at 437) ("If a fee applicant desires to recover the non-local rates of an attorney who is not from the place in which the case was filed, he must show a lack of attorneys practicing in that place who are willing and able to handle his claims.").

maritime arbitration and litigation. (Doc. 203-1 at 3, ¶ 3). He is admitted to practice before the state and federal courts of New York, Connecticut, and Massachusetts. (Doc. 203-1 at 3, ¶ 3).

Tisdale's affidavit also contained information about the associates who performed work related to this matter. Timothy J. Nast graduated law school in 2010. He has worked on various maritime matters. His rate was $240 in 2018, and it increased to $255 on January 1, 2019. (Doc. 203-1 at 4–5, ¶ 6). Jamison Jedziniak began with Tisdale Law Offices as a full-time associate in 2017, and he graduated from law school in 2017. Therefore, at the time this litigation began, he had approximately one year of post-J.D. legal experience. He is admitted to practice in Connecticut's state and federal courts. His admission to the state courts of New York is currently pending. (Doc. 203-1 at 5, ¶ 7). His rate began at $175 and increased to $190 on January 1, 2019. Finally, Austyn Carolin joined Tisdale Law Offices as an associate in 2017. She graduated from law school in 2017 and is admitted to the Connecticut Bar. Her rate, like Jedziniak's, began at $175 and increased to $190 on January 1, 2019. (Doc. 203-1 at 5, ¶ 8).

Maynard Cooper & Gale Shareholder Thomas S. Rue also submitted an affidavit, detailing his, as well as his colleagues', experience. Rue is a 1974 graduate of the University of Alabama School of Law, and his practice has been largely comprised of maritime work. (Doc. 203-11 at 2–3, ¶ 2). Rue also submitted biographical and professional information related to the attorneys and paralegals at Maynard Cooper & Gale who worked on this matter. The first is David C. Hannan. Hannan graduated from law school in 1971 and has practiced maritime law throughout his career. His hourly rate is the same as Mr. Rue's: $350. (Doc. 203-11 at 5, ¶ 4). The second colleague is J. Ben Segarra. Segarra, at the time he began working on this matter, was a seventh-year associate. He holds an LL.M. in Admiralty from Tulane University Law School. He served as a law clerk from 2008–2010. Segarra's hourly rate was $275.00

Very recently, the Court found as reasonable an hourly rate of $200 for a partner with 30 years' experience, Sloan v. Cunningham, No. CV 1:16-00202-KD-C, 2018 WL 468302, at *5 (S.D. Ala. Jan. 18, 2018), appeal dismissed, No. 18-10641-BB, 2018 WL 4008360 (11th Cir. July 10, 2018), and a rate of $250 for shareholders with 28 years and 39 years of experience. Developers Sur. & Indem. Co. v. Renew Maint. & Constr., Inc., No. CV 1:17-00495-KD-N, 2018 WL 6185999, at *11 (S.D. Ala. Oct. 5, 2018). Given the experience of the partners—nearly 45 years for Rue and 38 years for Tisdale—the Court finds an hourly rate of $325 is reasonable for the three partners. See Decorative Components Inc., Inc. v. ICON Computing Solutions, Inc., 2012 WL 5398800, *5-6 (S.D. Ala. Nov. 2, 2012) (citation omitted) (recognizing that $250 to $350 per hour was a reasonable hourly rate for well-qualified Mobile lawyers engaged in complex cases); see also Goldsby v. Renosol Seating, LLC, No. 2:08-0148-KD-N, 2013 WL 6535253, at *9 (S.D. Ala. Dec. 13, 2013) (stating in an FLSA collective action case that "this Court's customary hourly rates for attorneys . . . ranges from $250.00 to $300.00 for more experienced and qualified attorneys"). Accordingly, Tisdale, Rue, and Hannan's recoverable rate will be $325.

As for the associates' rates, the Court finds that they exceed what the Court has previously considered reasonable. As for Nast, with eight to nine years of experience, the Court finds as unreasonable the $240 and $255 rates. The Court also finds unreasonable Segarra's hourly rate of $275. Very recently, this Court determined associates with approximately 10 years of experience are due a reasonable rate of $225. Developers Sur. & Indem. Co., 2018 WL 6185999, at *11 ("Concerning associates, this Court has awarded up to $225/hour for associates with 10 years (or more) of experience."); see id. (awarding $225/hour for an associate with 14 years of experience). Accordingly, the Court awards $225 to associate attorneys Nast and Segarra.

Jedziniak and Carolin's rates began at $175 and increased to $190 in 2019. However, the Court finds as unreasonable their request and instead awards $150. See Ford v. Navika Capital Grp., LLC, No. CV 14-00311-KD-C, 2017 WL 1381668, at *7 (S.D. Ala. Apr. 17, 2017) (awarding a requested rate of $150 for associates with 1 to 1.5 years of experience); see also id. (citing cases to support the proposition that first- and second-year associates should be awarded between $145 and $150 per hour); Cardinal Health 108, LLC v. Hemacare Plus, Inc., No. CV 16-00079-KD-M, 2017 WL 114405, at *14 (S.D. Ala. Jan. 11, 2017) (awarding $150 to associates with one or two years of experience).

This Court has approved as reasonable a rate of $75.00 for paralegals. See Precision IBC, Inc. v. Phoenix Chem. Techs., LLC, No. CV 15-00637-C, 2017 WL 1404328, at *3 (S.D. Ala. Apr. 19, 2017) (citing cases for the proposition that "in this market, [the United States District Court for the Southern District of Alabama] regularly approves hourly rates of $75.00 for paralegals"); see also PNC Bank v. Classic Crab, Inc., No. CV 15-00459-KD-C, 2016 WL 1587237, at *5 (S.D. Ala. Apr. 19, 2016) (reducing a requested paralegal rate of between $85.50–$90.00 to $75.00 hourly). The Court therefore reduces the requested rates of $125 and $135 for the three paralegals who contributed to this matter and instead finds as reasonable an hourly rate of $75.00. The following table depicts the rates requested and rates awarded.

| Name | Year of Law School Graduation | Rate Requested | Rate Awarded |
| --- | --- | --- | --- |
| Tisdale | 1981 | $345 | $325 |
| Nast | 2010 | $240/$255 | $225 |
| Jedziniak | 2017 | $175/$190 | $150 |
| Carolin | 2017 | $175/$190 | $150 |
| Rue | 1974 | $350 | $325 |

| | | | |
|---|---|---|---|
| Hannan | 1971 | $350 | $325 |
| Segarra | 2007* | $275 | $225 |
| Paralegals | N/A | $125/$135 | $75 |

### ii. Reasonable Hours Expended

D'Amico argues that the hours its attorneys expended litigating the Mobile action were reasonable. With respect to the hours expended, d'Amico contends that none of the other alter ego defendants in the New York action objected to the reasonableness of the actions d'Amico took. (Doc. 204 at 6). Moreover, it asserts the bulk of the hours devoted here resulted from Nikka's motions and its obstructionist discovery practices. (Doc. 204 at 6).

Nikka argues that d'Amico's request is unreasonable. (Doc. 210 at 13). It encourages the Court to forgo a line-by-line analysis of the hours and instead reduce the number of hours requested by 80%. To support its claim that this reduction is warranted, Nikka argues that d'Amico overstaffed this case, (Doc. 210 at 16), as three partners, five associates,[5] and three paralegals performed work on this matter. It argues that the number of hours expended by two partners prior to making this motion—640.8 and 184.3 for Tisdale and Rue, respectively—is exceedingly high. And it notes the number of hours expended by the associates is also excessive. Nikka singles out as unreasonable the number of hours billed by Segarra, who billed 762.7 hours in this case. This compared to a *total*, Nikka observes, of 919.7 hours billed by associates at Tisdale Law Offices. Next, Nikka argues the redactions of the time sheets render any analysis too vague. It also argues that the block billing (that is, billing for both the New York and the Mobile actions) should not be

---

[5] Documentary evidence establishes that four—not five—associates worked on d'Amico's behalf, as d'Amico noted in its Reply. See (Doc. 215 at 12).

\* The year of graduation was not included in the affidavit. The Court infers this based upon when Segarra clerked and accounting for the fact that he received his LL.M.

included. And finally, Nikka argues d'Amico should not be able to recover time expended preparing, submitting, and arguing unsuccessful motions.

The Court is very familiar with this case and understands the number of pre- and post-trial motions made. Additionally, the Court remembers the novel issues raised. However, the Court cannot accept as reasonable the number of hours sought and finds that a 65% reduction of the total number of hours requested is warranted.

D'Amico repeatedly cites the attorneys' fee award in the New York action to bolster its claim that the hours expended in this action are reasonable. See e.g., (Doc. 204 at 6; Doc. 215 at 9). However, that reliance ignores an obvious difference between the New York action and this action. The New York action had been litigated for almost a decade. By contrast, this action began on June 22, 2018 and essentially ended in March 2019. Given this action's brief lifespan, the Court rejects as unreasonable the number of hours requested.

Another reason the Court finds the request unreasonable is the number of attorneys involved. Three partners,[6] two senior associates, and two junior associates worked on this matter. This is unreasonable, even accounting for the numerous motions. Redundant billing is a not incidental result of staffing this matter with so many lawyers. While the Court cannot determine with exactitude whether redundant billing occurred due to the redactions, it can be safely inferred. For example, Rue's affidavit states "Every document filed with the Southern District of Alabama in this case was reviewed by either Ben Segarra, me or both of us, consistent with the rules." (Doc. 203-11 at 8, ¶ 11). According to Rue, Segarra's primary responsibilities included "handling the laboring oar on legal research, spading the briefs filed by Nikka, and drafting done at [Maynard Cooper & Gale]. He was also the detail person for editing and formatting all court filings." (Doc.

---

[6] The Court appreciates that Hannan's involvement was minor.

203-11 at 6, ¶ 5). This research, spading, drafting, and editing was in addition to the 919.7 hours the associates employed by Tisdale Law Offices collectively billed. The surplus billing is apparent.

One example suffices. Paul Coronis was deposed in this action in a nine-hour deposition on October 24. A review of the available billing records suggests that Carolin "digest[ed]" his deposition for 7.8 hours on October 30 and 8.8 hours on October 31. (Doc. 203-2 at 53–54). Additionally, Jedziniak reviewed the Paul Coronis deposition for 6.10 hours on October 29, continued to review it for 8.20 hours on October 30, and then spent an exclusive 8.60 hours reviewing the deposition on October 31.[7] Segarra expended .9 hours in beginning to review Coronis' deposition transcript. This was, of course, on top of the hours Tisdale expended in actually deposing Coronis. This single example demonstrates how having multiple attorneys on the case resulted in redundant billing.

Redundant billing is not the only result of overstaffing. As another Court in this District has commented, "With so many cooks making the broth, the need for internal conferences to keep everyone on the same recipe rises dramatically and undermines the reasonableness of those billings." Lee v. Krystal Co., 918 F. Supp. 2d 1261, 1270 (S.D. Ala. 2013) (Steele, C.J.). Indeed, the need to apprise the various attorneys working on this matter resulted in a multitude of conferences, email exchanges between counsel, phone calls, and other strategy sessions. See e.g., (Doc. 203-2 at 28) (Tisdale billing 2.4 hours, which included, in part, "[n]umerous email exchanges with Mobile counsel" and a lengthy telephone conference); (Doc. 203-2 at 32) (Rue billing 2.5 hours over two days for email exchanges and telephone conferences with Tisdale and Segarra (among other tasks)); id. (Segarra billing .3 hours for reviewing and responding to emails from Tisdale regarding case strategy).

---

[7] The Court notes that not all of these entries were exclusively devoted to reviewing the Paul Coronis deposition.

As the Eleventh Circuit explained in Norman, "[r]edundant hours generally occur where more than one attorney represents a client." 836 F.2d at 1301–1302. While "[t]here is nothing inherently unreasonable about a client having multiple attorneys, . . . they may all be compensated if they are not unreasonably doing the same work and are being compensated for the distinct contribution of each lawyer." Norman, 836 F.2d at 1301–1302. But the evidence does not reveal that the work the multiple attorneys performed in this case constituted distinct contributions. In sum, the number of hours expended exceeds what the Court considers reasonable by 65%.

| Name | Rate Awarded | Hours Requested Pre-Motion | Hours Requested For Motion | Total Requested | Hours Awarded (35%) | Total |
|---|---|---|---|---|---|---|
| Tisdale | $325 | 640.8 | 34.7 | 675.5 | 236.425 | $76,838.125 |
| Nast | $225 | 179 | 3.2 | 182.2 | 63.77 | $14,348.250 |
| Jedziniak | $150 | 360.1 | 17.4 | 377.5 | 132.125 | $19,818.750 |
| Carolin | $150 | 380.6 | 5.9 | 386.5 | 135.275 | $20,291.250 |
| Rue | $325 | 184.3 | 10.7 | 195 | 68.25 | $22,181.250 |
| Hannan | $325 | 14.8 | | 14.8 | 5.18 | $1,683.500 |
| Segarra | $225 | 762.7 | | 762.7 | 266.945 | $60,062.625 |
| Paralegals | $75 | 89.6 | | 89.6 | 31.36 | $2,352.000 |
| | | | | | | $217,575.75 |

c. **Costs**

Finally, d'Amico seeks legal costs associated with the Mobile action. Aside from the general arguments Nikka presents about the unavailability of attorneys' fees and costs in this action, it has not specifically challenged any of the costs for which d'Amico seeks reimbursement. This is in contrast to the New York action, where it apparently challenged items such as meals. As a result, d'Amico's expenses are granted in full. The total costs requested amount to $170,765.12. Of that, $73,958.51 and $57,300.76 represent custodial expenses. The remainder ($39,505.85) constitutes other litigation expenses.

### III. CONCLUSION

D'Amico's motion for attorneys' fees (Doc. 203) is **GRANTED IN PART** in accordance with the foregoing. D'Amico's motion for attorneys' fees and costs is granted in the amount of $388,340.87.

Judgment will enter by separate document.

**DONE** the 9th day of July 2019.

/s/ Kristi K. DuBose
**KRISTI K. DuBOSE**
**CHIEF UNITED STATES DISTRICT JUDGE**